ELLEN NEWMAN, administratrix, *vs.* BRITISH AND NORTH AMERICAN STEAMSHIP COMPANY.

Evidence that the plaintiff entered the office of a company owning a line of foreign steamers and dealing in foreign drafts, and gave a sum of money in bills to be exchanged for gold to a person there, who, depositing it in a drawer of a safe that contained other bills and also gold, and making an entry in a book, gave a receipt for the money, as money to be exchanged for gold, although it may not be evidence sufficient, in an action against the company, to be submitted to the jury to establish the authority of the person giving the receipt to bind the company to a contract for the exchange of gold, is evidence sufficient to be submitted to the jury upon a count for money had and received to the plaintiff's use.

CONTRACT. The declaration was as follows:

"And the plaintiff says the defendants owe her, in her said capacity as administratrix, the sum of six hundred eighty-four dollars forty-seven cents for money received by the defendants to the use of the plaintiff's intestate, and interest thereon.

"And the plaintiff further says that the defendants were on the fourth day of November, 1868, the owners and managers of

a line of steamships between New York and Ireland, and were also engaged in the purchase and sale of foreign gold coin and of exchange, and the issuing of letters of credit, bills of exchange and drafts ; that they had numerous offices and agencies in said Ireland, on which they drew said drafts and at which they were payable ; that on said fourth day of November, 1868, the plaintiff's intestate, being about to go to said Ireland by one of said defendants' steamships, and having in his possession a large sum of money, to wit : six hundred and fifty-five dollars, which he was desirous to transfer to his credit in Ireland by means of a draft or letter of exchange on some bank in said Ireland, or to exchange the same for English gold to use in said Ireland, of all of which said defendants had full notice and full information, was induced by the representations of the defendants and at their request to pay the said sum of six hundred and fifty-five dollars to the defendants for the purpose, known to said defendants, of drawing said sum or its equivalent in English gold from some office or agency of the defendants in Ireland, as he should require the same there, or from said New York office, if he should prefer, and in consideration of the payment of said sum to them, said defendants promised to receive said sum of six hundred and fifty-five dollars, and repay it to him in English gold at any of their offices or agencies in Ireland or New York, and gave him the receipt and agreement therefor, a copy of which is annexed. And said intestate did not during his life draw said sum in any way from said defendants or any office or agency of theirs, nor since his decease has the plaintiff done so. But on the first day of June, 1872, and again on the fifteenth day of November, said plaintiff demanded of said defendants at New York said sum in English gold, but they refused to pay the same."

The defendants filed this answer :

" The defendants deny each and every allegation in the plaintiff's writ and declaration contained. And further answering the first count in said declaration, they say that they never received any sum of money whatever from the plaintiff's intestate or to his use ; and that if any money was so received, the same was repaid to the plaintiff's intestate.

" And answering the second count, and denying each allegation therein, they say that if any such receipt as is therein alleged was given to the plaintiff's intestate, the same was not given by defendants or by any person authorized by them ; and that the said sum of six hundred and fifty-five dollars, if ever received by the person purporting to have signed such receipt, was repaid to the plaintiff's intestate in lawful money of the United States or its equivalent in gold : and the defendants deny that E. W. Wheeler was ever authorized to receive moneys on their account, or to agree on their account to repay the same, or to exchange, or to agree to exchange the same for English gold."

At the trial in the Superior Court, before *Brigham*, C. J., the plaintiff offered evidence that Malachi Newman, the plaintiff's intestate, and the plaintiff, who was his wife, went to the Cunard steerage office in New York, November 8, 1868, and that there Mrs. Newman, at her husband's request, handed to one Wheeler, who was in the office, six hundred and fifty-five dollars in currency, which Wheeler put in a safe in a drawer where there was a large amount of bills and gold, and made an entry in a book, and then handed her a receipt as follows : " Cunard Line, Steerage office, 111 Broadway, New York, 4th Nov. 1868. Received of Malachi Newman the sum of six hundred and fifty-five dollars to be exchanged for English gold. E. W. Wheeler, Cunard Officer."

The plaintiff offered to prove the conversation had at that time between Newman and Wheeler, but the evidence was excluded on the ground that there was no sufficient evidence that Wheeler was acting for the defendants in regard to this transaction ; and the plaintiff excepted.

The plaintiff farther offered to prove that the defendants' agent at Lawrence had on two occasions exchanged gold and currency, but it was not claimed that he was acting as their agent in that transaction ; and that some clerk at the Cunard steerage office in Boston had told a witness, a few days before the trial, that they exchanged gold and currency, and that on the same day the witness did actually make such exchange at that office ; but no proof was offered that the exchange was made for the company. The evidence was excluded, and the plaintiff excepted.

It was admitted that the office 111 Broadway was an agency of the defendants, and that they owned a steamship line and dealt in drafts on England and Ireland, but it was not admitted that they dealt in gold in any way.

On the above evidence the court directed a verdict for the defendants, and the plaintiff alleged exceptions.

*C. U. Bell,* for the plaintiff.

*S. B. Ives, Jr.,* for the defendants.

AMES, J. Upon this report it is impossible to say that there was literally no evidence in support of the plaintiff's case. The transaction occurred at the defendants' office and usual place of business. They were the owners of a line of steamships, conveying passengers, as the name indicates, between this continent and Great Britain. Part of their business was the dealing in funds to be used in England and Ireland, in the form of drafts. The plaintiff's intestate, in company with the plaintiff, called at the defendants' office, and found Wheeler there. They had a right to suppose that the defendants had the control of their own premises, and that nobody would be allowed to be there, and intermeddle with the business, without their authority. He is found there, presumptively not as an intruder, but in apparent possession, (we must suppose behind the counter,) having free access to their safe, opening their drawers in which valuable property was deposited, making entries in books, and conducting himself as if he were engaged in the regular and ordinary business of the place. Persons having business at that office could not be expected to call for proof of the authority of clerks and agents whom they find there acting as such, but must trust to appearances, and to the not unreasonable assumption that the defendants would not permit unauthorized persons to be so engaged. The receipt of money, to be exchanged for value in some other form, was part of the regular business of the office, and although there is no evidence that Wheeler had authority to bind the defendants by a contract to return an equivalent in gold, there is evidence tending to show that he received money as their agent, which, *ex æquo et bono,* should be accounted for. Upon the counts for money had and received, therefore, the plaintiff was entitled to go to the jury. *Exceptions sustained.*