## LAFAYETTE MILLS *vs.* THE BALTIMORE, CHESAPEAKE AND ATLANTIC RAILWAY CO.

*Carriers—Failure of Connecting Carrier to Make Connection in Time.*

A person who buys from one carrier a round-trip ticket, good for one day, providing for transportation to a certain point and return, and then buys another ticket from another carrier for transportation from that point and return thereto, has no right of action against the first carrier on account of the negligence of the second in failing to make due connection with the first, so that the purchaser was prevented from returning on the day for which his ticket was issued. The mere fact that the second ticket was purchased from a man in uniform on the boat of the first carrier—the defendant—does not show that he was the agent of the defendant, or that the defendant contracted for transportation over the line of the second carrier.

*Decided June 30th, 1909.*

Appeal from the Circuit Court for Wicomico County.

The cause was submitted to the Court on briefs by:

*Elmer H. Walton* and *Toadvin & Bell,* for the appellant.

*Robert P. Graham,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is a suit brought by Lafayette Mills, the appellant, against the appellee, the Baltimore, Chesapeake and Atlantic Railway Company, a corporation engaged in the business of a common carrier between Baltimore and Ocean City, Md.,

its route being by steamer from Baltimore to Claiborne, in
fendant demurred to the declaration, and the demurrer being
Talbot County, and thence by rail to Ocean City. The de-
overruled, he refused to plead over, and judgment was en-
tered for the defendant on the demurrer.

The declaration alleged that on August 17th, 1908, the
defendant advertised and ran an excursion from Ocean City
to Chesapeake Beach, in Calvert County, and to Washing-
ton City; that on that day the plaintiff bought at Salisbury,
a station on defendant's line, a ticket from Salisbury to Ches-
apeake Beach and return; that relying on the statements of
the advertisement of said excursion, he bought from some per-
son in uniform on the defendant's steamer between Clai-
borne and Chesapeake Beach, whom he believed to be acting
as agent for the defendant, a ticket entitling him to trans-
portation from Chesapeake Beach to Washington and re-
turn, both said tickets being good for that day only; that on
reaching Chesapeake Beach he entered one of the cars of the
Chesapeake Beach Railway Company, a corporation engaged
in business as a common carrier over its own line between
Chesapeake Beach and Washington, D. C., and was carried
to Washington on said last-mentioned ticket; that on the same
day, and upon the return coupon of said last-mentioned
ticket, he was carried from Washington to Chesapeake Beach
by the cars of the Chesapeake Beach Railway Company, but
by reason of the negligence of that company he did not reach
Chesapeake Beach until after 7 o'clock P. M., which was
the hour advertised for the steamer to leave Chesapeake
Beach on the return to Claiborne, and when he arrived the
steamer had then left the wharf, though still within sight
and hearing, but that the officers of the steamer would not
return for him and others who held tickets similar to plain-
tiff. There can be no difficulty upon this state of facts in sus-
taining the ruling upon the demurrer.

The declaration expressly states that the ticket purchased
at Salisbury only entitled the plaintiff to transportation to
Chseapeake Beach and return from that point to Salisbury

on that day, and that after making that contract of carriage, and while en route from Claiborne to Chesapeake Beach, he entered into another contract of carriage with the Chesapeake Beach Railway Company, through a person whom he believed to be an agent of the defendant, because he was in uniform, for transportation from Chesapeake Beach to Washington and return on that day, and that because of the negligence of the Chesapeake Beach Railway Company, he failed to connect with the steamer of the defendant, and suffered loss and damage thereby.

The declaration does not show what the statements of the advertisement were upon which he relied in purchasing the last-mentioned ticket; what were its stipulations or form; what uniform the person wore from whom the ticket was purchased, or any fact which warranted him in believing that he was an agent for defendant. All this is left to the imagination. The bare proposition is that he purchased a ticket from one corporation for transportation to one point and return, and that he purchased another ticket from another corporation for transportation from the first terminus to another point and return, and that by reason of the negligence of the latter corporation he has sustained an injury, and it is attempted to eke out this statement of a cause of action by alleging a belief merely that the person from whom he purchased the second ticket sold the same as agent of the defendant. Section 2 of Art. 75 of the Code declares that in all pleadings "facts only shall be stated, and not arguments or inferences," and this rule, which is only declaratory of the common law, is founded on the necessity "of informing the opposite party of what is meant to be proved, in order to give him an opportunity to answer or traverse it." But if there had been a direct allegation that the person from whom the second ticket was purchased was a servant or agent of the defendant, it would not alter the case. The declaration alleges that this ticket was a ticket issued by the Chesapeake Beach Railway Company, and it was the contract of that company, and not

of the defendant company, even though sold by someone in the service of the latter.

In 6 *Cyc.* 571 the law applicable to the facts as gathered from the most liberal construction of the declaration is stated thus: "In the absence of any arrangement between carriers operating connecting lines, there is no right on the part of either to bind the other by the sale of a ticket for through transportation over the two lines. But joint arrangements are frequently made by which tickets issued by one of such carriers are accepted by the other. The usual arrangement is that by which each of the connecting carriers sells tickets for the through transportation, acting as *principal* with reference to its own line, and as *agent* for the connecting carrier in contracting for transportation over the connecting line. A ticket thus sold is not a through contract, and the rights of the purchaser, and the responsibility of the different companies are the same as though separate tickets had been purchased by him from each, and each is responsible for injury suffered on its own line, and not otherwise." Of course, a carrier may contract in its own behalf for through transportation over a connecting line, and where this clearly appears, such carrier would be liable to the ticket holder for any injury caused by the negligence of the connecting carrier.

On page 584 of 6 *Cyc.* it is also said: "Where the passenger's route is over connecting lines of independent carriers, the first carrier discharges his duty when he delivers the passenger at the end of his own line ready to continue the transportation on the connecting line, and he will not be liable for any failure of the connecting carrier to perform his independent contract." It is obviously the duty of travellers to inform themselves as to the train which should be taken to enable them to make necessary connections, and it was so declared in *Duling* v. *P. W. & B. R. R. Co.,* 66 Md. 122. There is no allegation in this declaration that the train the plaintiff took was scheduled to connect with the steamer at Chesapeake Beach, or that the steamer left there before the advertised hour of 7 P. M. But there is an express aver-

ment that the train did not reach Chesapeake Beach until after 7 P. M., and as the steamer was then not far distant from the pier, the necessary conclusion is that it did not leave before the appointed hour and that the defendant is therefore not chargeable with any breach of its contract with the plaintiff. No cause of action against this defendant is shown by any or all the averments of the declaration. If any can be shown to exist, it must be against the Chesapeake Beach Railway Company.

This judgment therefore must be affirmed.

> *Judgment affirmed, with costs to the appellee above and below.*