MATTI RINTAMAKI *vs.* CUNARD STEAMSHIP COMPANY, LIMITED.

Suffolk.    January 13, 1910. — February 23, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Agency*, Scope of apparent authority. *Evidence*, To show apparent authority.

In an action by a native of Finland against an ocean steamship company for a sum of money entrusted to an employee of the defendant for transmission to a person in Finland, it appeared that the employee of the defendant to whom the money was entrusted appropriated it to his own use and shortly afterwards disappeared. The plaintiff had been in this country about ten years and could not read, write or speak English. The employee of the defendant to whom the plaintiff entrusted the money also was a Finn, and the plaintiff had known him for about four years, having met him first at the defendant's office, when the plaintiff went there with a friend who had business with the defendant. At the time of entrusting the money the plaintiff went into a basement office at the defendant's principal place of business in this Commonwealth, where the defendant's name was displayed and where also was a notice that foreign money orders were for sale. Inside the office was a counter behind which were five persons, all at desks, one of whom was the Finnish employee. The plaintiff addressed himself to this employee, and explained to him that he wished to send the sum of money to a certain person in Finland. The employee undertook in behalf of the defendant to send the money for the plaintiff and said, "In between six and seven weeks, if the money should not reach Finland, you could come here in this office and get your money back." Thereupon the plaintiff told the employee where to send the money and counted it out to him, and the employee gave the plaintiff a receipt for the money on a memorandum form of the defendant signed in his own name. The business was conducted openly before the other persons present. There was evidence that the Finnish employee, with the approval of a person who was or represented himself to be the defendant's agent, previously had acted for the defendant in forwarding to a person in Finland tickets from Finland to America and that his letters in this transaction were copied in the letter

books in the defendant's office, also that an advertisement in Finnish had been inserted by the defendant in a newspaper in another city which referred to the employee in question in connection with the defendant's passenger business from Finland as "Manager of the Finnish department." The head of the department in which this man was employed testified on cross-examination that the defendant sometimes sent tickets to Finland for Finnish customers, and that if a Finnish customer came in, the business, whether relating to the sale of tickets or drafts, ordinarily would be turned over to the defendant's Finnish representative and that he himself would not appear in it at all. *Held*, that as between the plaintiff and the defendant the actual authority of the employee to whom the plaintiff entrusted the money was immaterial, if the defendant suffered him to exercise an authority which he did not in fact possess or negligently failed to prevent him from doing so and the plaintiff thereby was led to deal with him as with one having the authority which he purported to have; and that there was evidence warranting a finding that the defendant's employee in receiving the plaintiff's money was acting within the scope of his apparent authority as agent of the defendant and that the plaintiff was justified in dealing with him accordingly.

In an action to recover the amount of a sum of money which was entrusted by the plaintiff to an employee of the defendant, who professed to receive it as the agent of the defendant for transmission to a foreign country, where the case of the plaintiff depends on his showing that the employee of the defendant to whom he entrusted the money was acting within the scope of his apparent authority as agent of the defendant, evidence of the history of the transaction, including the receipt in writing for the money given to the plaintiff by the employee whose apparent authority is in question, and evidence tending to show that such employee was undertaking to act as agent of the defendant and not on his own account, including his card which he gave to the plaintiff at the defendant's office with the name and address of the defendant upon it below his own name, are pertinent and competent. So also evidence, that such employee made use of the defendant's letter book to copy letters written by him in regard to a previous transaction with another person in which he had undertaken to act for the defendant, properly may be admitted as bearing, although slightly, on the scope of the apparent authority of the employee and on the defendant's means of knowledge in regard to such apparent authority.

MORTON, J. The plaintiff brings this action to recover from the defendant money received by it, according to the first count, for the plaintiff's use, and, according to the second count for the same cause of action, for breach of contract to convey to one Sinkonen, in Finland, pursuant to a receipt a copy of which is annexed to the declaration, money delivered by the plaintiff to the defendant for that purpose. There was a verdict for the plaintiff, and the case is here on exceptions by the defendant to a refusal of the presiding judge * to give certain rulings and to the admission of evidence.

---

* The case was tried before *Bishop*, J. After his death the exceptions were allowed by *Pierce*, J.

The money was delivered by the plaintiff to one Carl Blomquist, an employee of the defendant, who appropriated it to his own use and shortly after disappeared. The principal question is whether there was evidence warranting a finding that in receiving the money Blomquist was acting within the scope of his apparent authority as agent of the defendant, and whether the plaintiff was justified in dealing with him accordingly. We think that there was evidence warranting such a finding.

It was not contended at the trial that Blomquist was expressly authorized by the defendant to receive money from the plaintiff and forward it to Finland, as he undertook to do; and the court instructed the jury in so many words that they were to "start in this case with the proposition that there was no express authority from the Cunard Company to Blomquist to take the plaintiff's money and send it to Finland." No question of express agency is therefore before us. So far as any instructions were requested by the defendant in relation to that matter the ruling of the judge was in its favor and no exception lies thereto.

As we have said, the principal question relates to the matter of Blomquist's apparent authority as distinguished from his actual or express authority. The question whether one is acting within the apparent scope of his authority as agent for another is usually one of fact, the answer to which depends on the inference to be drawn from a variety of circumstances relating to the conduct of the apparent agent, and the knowledge or means of knowledge of the alleged principal of what is claimed to have been done in his behalf. If the circumstances are such by reason of the acquiescence or negligence of the alleged principal, or by reason of the nature of the duties entrusted to the supposed agent, and the situation in which the alleged principal has put him, as to warrant third parties in the exercise of a reasonable prudence and discretion in dealing with him as having authority to represent the alleged principal in regard to the transaction in question, then such principal will be bound; otherwise not.

The plaintiff was a Finn who had been in this country about ten years. He could neither read, write nor speak English. He had known Blomquist, who also was a Finn, about four years, "having first met him at the defendant's office, when he went

there with a friend who had business with the company." At the time of the transaction in question he went into one of the offices of the defendant company where Blomquist was. The company's principal place of business in this Commonwealth was then at 126 State Street, and the office into which the plaintiff went was there. The office was a basement office, and on the door leading down to it were the words, " Cunard Line. Second Cabin. Third Class. Steerage. Drafts," with a hand pointing down the stairs to the office. On the windows of the .office facing State Street and on the wall facing the foot of the :stairs were the words, " Cunard Line. Money orders for £1 and upwards, payable free of discount at Ireland, England, Scotland and Wales, for sale here." Inside the office was a counter behind which were five persons, including Blomquist, all at desks. There was nothing to indicate the scope of the duties of the different persons behind the counter, or to show that any one visiting the office could not transact his business with either of the persons behind the counter. The plaintiff naturally addressed himself to Blomquist, to whom he had previously spoken about sending money to Finland, and who had told him that " Our company sends money just as well as any other company, and you get the most for your money sending it through England," and explained what he wanted to do which was to send $450 to Elias Sinkonen in Finland. In reply Blomquist told the plaintiff, as he had before, " Our company would send money to Finland same as all the other companies do, if you want to send money to Finland. In between six and seven weeks, if the money should not reach Finland, you could come here in this office and get your money back." Thereupon the plaintiff told Blomquist where to send the money and counted out the $450 to him, and Blomquist gave him a receipt therefor on a memorandum form of the defendant company signed in his own name. The business was conducted openly, and, as the jury could properly have found, without anything in the attendant circumstances to put the plaintiff on his guard or to show that he acted otherwise than as a reasonably prudent man would have done. Indeed considering the well known nature of the defendant's business, it would have been surprising if a person in the plaintiff's apparent station in life, seeing Blomquist in the office and behind the counter,

would not have concluded almost inevitably that he was author-
ized to represent the company in any business which he assumed
to transact with him.  As was said in *Newman* v. *British & North
American Steamship Co.* 113 Mass. 362, 365 : " Persons having
business at that office could not be expected to call for proof of
the authority of clerks and agents whom they find there acting
as such, but must trust to appearances, and to the not unreasona-
ble assumption that the defendants would not permit unauthor-
ized persons to be so engaged."

In regard to Blomquist's apparent authority there was evidence
tending to show that on a previous occasion another person had
gone to the defendant's third cabin department and had been
turned over by some one who either was or represented himself
to be Mr. Martin, the defendant's agent, to Blomquist to trans-
act her business with, and that she had given Blomquist $20 and
had purchased two and a half tickets from Finland to America,
to be sent to her brother in Finland, and that the brother had
received the money and the tickets.  There was also evidence
that Blomquist's letters forwarding the tickets and money were
copied into the letter books in the office.  All of this evidence
was excepted to, but was admissible as bearing directly on Blom-
quist's authority and the defendant's knowledge of what Blom-
quist had done.  There was likewise evidence of an advertisement
in Finnish inserted by the defendant in a Fitchburg paper in
which Blomquist was referred to in connection with the passen-
ger business from Finland as " manager of the Finnish depart-
ment."  This also was excepted to but was plainly admissible.
The manager of the department in which Blomquist was em-
ployed testified, in substance, on cross-examination by the plain-
tiff, that they sometimes sent tickets to Finland for Finnish
customers, and that if a Finnish customer came in, the business,
whether relating to the sale of tickets or drafts, ordinarily would
be turned over to the company's Finnish representative and he
himself would not appear in it at all.  There was other evidence
which it was contended by the plaintiff tended still further to
show that Blomquist had apparent authority to do what he did.

Evidence of a contradictory nature was introduced by the de-
fendant.  But we do not think it necessary to go into the evidence
more in detail.  The question is not as to the weight of the evi-

dence but whether there was any evidence warranting a finding by the jury that in receiving the plaintiff's money to send to Finland Blomquist was acting within the apparent scope of his authority, and whether the plaintiff was justified in dealing with him accordingly. We think, as already observed, that it is clear that there was evidence warranting such a finding. As between the plaintiff and the defendant it is immaterial what the extent of Blomquist's actual authority was if the defendant suffered him to exercise an authority which he did not in fact possess, or negligently failed to prevent him from doing so and the plaintiff was thereby led to deal with him as one having the authority which he purported to have. The defendant relies on *Burroughs* v. *Norwich & Worcester Railroad*, 100 Mass. 26. But there were no such circumstances in that case, as there are in this, to show that the agent was acting within the scope of authority apparently conferred upon him by his principal.

Some of the evidence which was admitted subject to the defendant's exception has already been referred to. We see no error in regard to other evidence which was similarly admitted. It was all pertinent and competent either, as in the case of the receipt, as part of the history of the transaction, or, as in the case of Blomquist's card,* as tending to show that Blomquist was acting as agent for the defendant and not on his own account, or, as in the case of untranslated letters in Finnish, to show that Blomquist was using the defendant's letter book, and as thus bearing, though slightly, on the extent of his apparent authority, and the defendant's knowledge or means of knowledge in relation thereto.

*Exceptions overruled.*

*J. L. Putnam*, for the defendant.
*W. W. Stover*, for the plaintiff.

---

\* The portion of the bill of exceptions relating to the admission of this card in evidence was as follows: " The plaintiff offered in evidence a card given him by Blomquist at the defendant's office, which reads ' Carl Blomquist,' and Finnish words which the interpreter translated as ' Taking in Finnish cases and looking after Finnish business. Cunard Steamship Co., State Street, Boston.' This was admitted at the end of all the evidence subject to the defendant's exception."