BERT DOIDGE, administrator, *vs.* CUNARD STEAMSHIP COMPANY, LIMITED.

KATHLEEN DOIDGE *vs.* SAME.

BERT DOIDGE *vs.* SAME.

Suffolk.  February 5, 1932. — May 19, 1932.

Present: RUGG, C.J., CROSBY, WAIT, SANDERSON, & FIELD, JJ.

*Contract,* What constitutes. *Agency,* Existence of relation, Scope of authority. *Steamship Company. Proximate Cause. Actionable Tort.*

Where, at the trial of an action of contract by the administrator of a woman's estate against a steamship company for breach of contract to procure a proper passport and visa for the woman's entry from England into the United States and for failure to inform her of a defective visa, evidence for the plaintiff showed merely that the woman purchased a ticket for passage from England to the United States on one of the defendant's ships from a passage broker in England, who also undertook to procure the passport and visa for her; that he subsequently sent her a passport upon which he had forged the visa of the consul of the United States and which lacked the consul's seal and the date of the visa; that a representative of the defendant examined the passport at the dock and permitted the woman to board the vessel, although the inspection of the passport should have revealed that the visa was invalid; that, because of the defective visa, the woman was not permitted to land in the United States; and that, almost universally, passage brokers procured passports for passengers, would not have warranted a verdict for the plaintiff even if the jury disbelieved uncontradicted testimony for the defendant that the procuring of passports was distinct from the selling of passages, was done by the brokers on their own account and was not controlled by the steamship companies: a finding was not warranted that the defendant undertook to procure a passport for the woman, nor did the inspection of the passport at the dock imply an agreement by the defendant with her to pass upon the validity of the passport or visa.

In an action of tort by the husband of the woman above mentioned against the steamship company for negligence in the matter of her transportation, the plaintiff sought to recover incidental expenses in connection with sickness on her part and her resultant death, which occurred while she was being detained at an immigration station in the United States. This court, without deciding whether, in any event, any duty of the defendant to the woman arose from its knowledge that lack of a valid passport and visa would prevent her landing in the United States, *held*, that there was no causal connection between the failure to detect the invalidity of the passport and the damage alleged by the plaintiff.

THREE ACTIONS OF TORT OR CONTRACT. Writs dated June 7, 1927.

The actions were tried together in the Superior Court before *Walsh*, J. Upon order by the judge the plaintiffs in the first and second actions elected to proceed in contract, and the plaintiff in the third action elected to proceed in tort. Material evidence is stated in the opinion. The judge ordered a verdict for the defendant in each action and reported the actions for determination by this court.

*J. S. McCann*, for the plaintiffs.

*A. J. Santry*, (*F. Fish* with him,) for the defendant.

WAIT, J. These three cases, which were tried together, are before us upon a report of the trial judge who directed a verdict for the defendant in each case.

The circumstances out of which they arose are as follows: In September, 1923, Bert Doidge, who had been a bricklayer in Huddersfield, England, where he had lived with his wife and minor daughter, came to Massachusetts. In November of that year he sent money to his wife so that she should come thither and bring their child. She negotiated for passage on a vessel of the defendant, the Cunard Steamship Company, Ltd., with L. R. Stanton, "Excursion Shipping & Tourist Agent," "Travel Director," "General Travel Organiser," who had an office in Huddersfield, and who was an agent for various shipping lines for booking passage on steamships. Through the Stanton office she purchased tickets for herself and child from Liverpool to Boston, via New York. She dealt with one Gray in the employ of Stanton. Gray secured her ticket; and also

undertook to obtain for her a passport, which was required to enable her to be taken aboard the defendant's vessel at Liverpool and to be permitted to land in the United States. He obtained and sent to her a passport. She took this to the United States consul at Bradford, who refused a visa. Gray had told her that the quota of immigration was filled, but she could go to the United States for six months. She reported the refusal to Gray, who said he would arrange with the consul general and obtain a visa. She took her other papers to one Batten at the office of the defendant in Liverpool on November 16 and received necessary authority for inland transportation from New York to Boston on behalf of the defendant. On November 17 Gray sent her her passport bearing a visa ostensibly signed by the consul at Bradford but in fact forged by Gray and lacking the seal of the consul with the date of visa. The defendant's steamer, on November 17, took on its passengers at the Prince's Landing at Liverpool which is controlled by the Mersey Docks and Harbour Board and not by the defendant. Passengers are required to exhibit their passports at the gangplank before being allowed to go on board the vessel. A representative of the defendant examines them. Mrs. Doidge exhibited her passport and was allowed on board. The examination necessarily is hurried and, in practice, the representative looks closely only at the consul's seal and date. Inspection should have shown her visa to be invalid. On reaching New York she and her daughter were in good health, but were not permitted to land, owing to the defective passport. She and her daughter were sent to Ellis Island and detained there. Application for permission to depart for Boston with the husband and father was denied, and appeal was taken. Both Mrs. Doidge and the daughter were taken ill about December 5, and on December 12, 1923, Mrs. Doidge died at Ellis Island of pneumonia. The sick daughter was then allowed to leave with her father, came to Boston and was ill for a considerable period. Gray absconded immediately after sending the forged visa to Mrs. Doidge, and took with him her passage money and that of others.

The actions were brought in 1927. The amended declaration in the case of Bert Doidge, administrator, charged breach of contract to procure passport and visa necessary and proper to permit entry into the United States and failure to inform of defective visa which was or should have been known to be defective, and alleged that, in consequence, May Doidge was refused admission and detained by the United States government resulting in mental anguish, exhaustion of strength and weakened vitality culminating in her death. In the action of Kathleen, the daughter, similar breach of contract was alleged resulting in refusal of admission and detention, and, as a consequence, mental and bodily suffering. Bert Doidge sued in two counts, one for wrongful and negligent conduct toward the wife in regard to the contract for transportation and passport set out in the other declarations resulting in great expense for care and for burial, as well as in deprivation of her society, comfort and services; the other, in substantially the same words but confining damage to medical expenses and hospital bills. The defendant, without waiving a demurrer which apparently never has been pressed, answered a general denial. At the trial Bert Doidge proceeded in tort and the other plaintiffs in contract.

It is manifest that the defendant cannot be liable in contract if it did not undertake to procure a passport. It furnished the transportation between Liverpool and Boston. There was no evidence of any undertaking with regard to passports unless it was to be inferred from testimony that, almost universally, persons who dealt in procuring passage with steamship companies, and who were required by the law of England to hold licenses as passage brokers, in fact also procured passports for the passengers who needed them, and that "It is well known that all the agents procure passports for passengers." Stanton, Gray and Lister, one of the two managers of the defendant, held passage brokers' licenses. Stanton was authorized to sell passage and act as passage broker for the defendant. There was no evidence of authority in Gray from the defendant. He was employed and paid by Stanton to whom he accounted. There was no

testimony contradicting the testimony of witnesses called by the defendant that procuring passage and procuring passports were distinct. For the former the agent receives a commission from the steamship company; for the latter he is paid by the passenger. The companies do not exercise control over the passport matter. No account is rendered in regard to passports by holders of passage brokers' licenses to the shipping companies. Neither Stanton nor Gray accounted in any way to the defendant in their passport activities. If the testimony of the defendant's witnesses on this point was discredited, no testimony appeared to show exercise of control by the defendant. No legitimate inference is possible that the defendant undertook to procure a passport for Mrs. Doidge and her daughter. Nor do we find any contract to pass upon the validity of passport or visa implied from the inspection at the gangplank. The statutes of the United States then in force imposed a penalty on the defendant if it brought inadmissible immigrants hither and compelled it to carry back such as it brings. It is protecting itself in making sure that passports, where necessary to admission, are in proper form. We see no agreement with the passenger in this inspection made for its own benefit.

What has been said disposes of the cases which, by the plaintiffs' election, were rested upon contract. The case of Bert Doidge, however, was tried upon the theory of tort, that is, that there was negligent failure in the performance of a duty owed by the defendant to the plaintiff resulting in damage to him. The only possible lack of care by any one for whom the defendant was responsible was the failure of the servant or agent at the gangplank at the Prince's Landing to detect the absence of the consular seal on the passport and the forged visa. Without discussing whether any duty to the plaintiff arose from knowledge by the defendant that an invalid passport would prevent landing at New York and interrupt the transportation of the passengers to Boston, we think recovery here was impossible because there is no causal connection between the failure to detect the invalidity of the passport and the

damage claimed. There intervened between the former event and the illness and death of Mrs. Doidge with the attendant expense to the plaintiff, the acts of United States officials in refusing a permit to land, the detention of wife and child by those officials at Ellis Island, and the onset of disease unconnected with any happening on the voyage to New York attributable to the defendant. Nothing was alleged or was shown in evidence to support a finding that illness and death were results reasonably to be anticipated to follow from the oversight in permitting transportation to the United States on a defective passport. Under our decisions in *Slater* v. *T. C. Baker Co.* 261 Mass. 424, *Bellino* v. *Columbus Construction Co.* 188 Mass. 430, we think the cause too remote to create liability. The causal connection, if any, is too tenuous. See also *Atchison, Topeka & Santa Fe Railway* v. *Calhoun,* 213 U. S. 1, 7.

No case directly in point is called to our attention by counsel. *Central of Georgia Railway* v. *Price,* 106 Ga. 176, cited by the defendant, is substantially in accord with our decision. *Williams* v. *Vanderbilt,* 28 N. Y. 217, rests upon facts essentially different. In *Newman* v. *British & North American Steamship Co.* 113 Mass. 362, the defendant advertised its dealing in drafts as well as its transportation business. Rules applicable to transportation of goods wholly in the control of a carrier we think do not apply here.

All contentions and arguments advanced have been considered, but further statement or discussion is not essential to our decision.

In accord with the stipulation of the report the order will be, in each case,

*Judgment for defendant.*