Cabe, J.
These are actions of tort in which the plaintiffs seek to recover for injuries received as the result of the explosion of a can of beans while on the defendant’s premises.
It would seem that the evidence is not as full as it might well have (been to help in the solution of a difficult and important question. Much more, it seems, might have been offered to show how the defendant’s store was operated and as to the conduct of the plaintiffs. The defendant conducted the store in Dorchester where the accident took place. It may be assumed in these days of high pressure advertising that the defendant maintained a sign on its building notifying prospective customers that the store was run by the McLellan Stores Company. At any rate the defendant displayed in the show window menu cards at the top of which in large letters appeared the name, “McLellan’s Luncheonette”. The entire store including *301 the luncheonette was of one general scheme; there was no dividing wall between the luncheonette and the rest of the store; there was no sign over the luncheonette stating that it was operated by the defendant or by another so that an ordinary customer could not see any difference between the defendant’s part of the store and the luncheonette. There was nothing on the uniforms of the employees working at the luncheonette indicating the name of the employer. Permanent menu cards at the top of which (as on those in the window) appeared printed in large letters “McLellan’s Luncheonette” from one of which the plaintiffs ordered the meals they were eating when injured, were kept at the luncheonette. The plaintiffs, while eating at the luncheon counter of this luncheonette, were injured by the explosion of a can of beans negligently placed in the oven of the stove on the premises by an employee of the luncheonette. In fact, the luncheonette, though occupying a part of the defendant’s store, was not operated by the defendant but by a concessionaire of the defendant known as the A & S Luncheonette, a Massachusetts corporation which employed the manager, and all others working in the luncheonette. Certain small licenses in the name of the concessionaire were not seen by the plaintiffs; in fact the finding of the trial judge negatives knowledges of the true situation on the part of the plaintiffs.
The issue is whether under these circumstances the trial judge was warranted in finding that the defendant was estopped to deny responsibility for its concessionaire and if so, whether he was right in denying the defendant’s requests for rulings because of this estoppel.
There is no doubt that it could have been found that the defendant led the plaintiffs to believe that it operated *302 the luncheonette and that in buying their food plaintiffs made an enforcible contract with the defendant and that they were business visitors to the defendant’s establishment. Timmins v. F. M. Joslin Co., 303 Mass. 540. In the Tirmnins case there was a concession; there was in fact no agency. The cases in this aspect are the same. There was no question in the Timmins case of the ostensible powers of an actual agent. The defendant in that case obviously was estopped to deny agency.
We do not understand that this is questioned by the defendant and if material to the decision, it may be considered that the trial judge found such contract. Adams v. Dick, 226 Mass. 46, 53.
In fact in its brief the defendant' admits that if the plaintiffs had eaten contaminated food at the luncheonette, the court would have been warranted in holding that the defendant would be estopped from denying the agency of the employee from whom the food was purchased. Just why the defendant limits the estoppel to this employee and does not extend it to the man who prepared the food or to the luncheonette in general we do not know. The defendant also admits that the plaintiffs could bring an action of contract because of the ostensible agency. Thereby we think it admitted very sensibly that the ostensible powers of a real agent and the apparent powers of a person whom the principal is estopped to say is agent are the same. The defendant also admits that the plaintiffs could have brought an action of tort for this wrong. We assume it meant tort for negligence for that is what we are talcing about. We are a little surprised at this not only because of the defendant’s second and fourth requests for rulings but because it brings the law of estoppel into the field of *303 tort. Doubtless the defendant was forced to this position by such decisions as McDonald v. Dr. McKnight Inc., 248 Mass. 43 and Denny v. Riverbank Court Hotel, 282 Mass. 176.
So by the defendant’s reasoning, if material, we come to this: that although the defendant actually and impliedly represented that it ran the whole luncheonette, it was estopped only to deny its responsibility for the employee who served the food and not for the employee who negligently blew up the can of beans near these customers.
Perhaps we find the defendant’s reason for this limitation in the further statement in its brief that “if there is a representation, it is that the persons (the italics are ours) working at the luncheon counter are agents or servants of the defendant. Reliance upon this representation and action upon it did not cause the plaintiffs ’ injuries ’ ’. We take this to mean that liability for tort for negligence is based on foreseeability and that the putative principal could not have foreseen that his representation would cause the injury that happened. This stand confuses the laws of estoppel, agency and tort. Foreseeability is the test of liability for negligence, Bohlen Torts, Chapter I p. 9 & p. 28, Hill v. Winsor, 118 Mass. 251, but this is the foreseeability of the normal man as the situation appeared to him at the time of his act which later caused the injury. When a principal appoints an agent, he may realize that he will be responsible if the agent does wrong but he does not foresee the consequences of the act which causes the injury. So the person who does something which leads another to believe that a man is his agent, should know that this may lead to responsibility, but the test of foreseeability does not arise until the act, the consequences of which are to be determined, is done.
*304 Returning to the main issue there is respectable authority going further than the defendant does and holding that estoppel has no place in the law of tort, especially tort for negligence.
Thus in a California case it was said “There is no question of estoppel involved in this case, and the appellant in order to escape liability for the negligence of Dickenson” (who by contract had taken over control of the mine) “was not bound to give any notice to the miners that he had given up the control of the mine”.
“This is not an action of contract based upon ostensible agency, but is an action in tort, and must rest upon actual facts and the actual relation existing between the parties”. Smith v. Belshaw, 89 Cal. 427, see also Barton v. Studebaker Corp., 46 Cal. App. 707, 723, Piedmont Operating Co. v. Cummings, 40 Ga. App. 397, 400, Mecham Agency, sec. 724.
There is good reason for denying the effect of estoppel in many instances of tort for negligence.
There is no time for estoppel when the negligent driver is bearing down on the pedestrian. Whatever may then be held out about the driver, the victim has no chance to rely on it. It may be quite different where before the tort is committed the prospective victim has time to act on a representation.
We see no reason why estoppel should not apply in cases of tort for negligence where opportunity to act on representation exists. A great part of our daily determinations are justifiably based on appearances. To a great extent things are what they seem. Possession is evidence of ownership. The meeting of minds in contract is judged by objective tests (Williston Contract Rev. Ed. sec. 1536). *305 Seeing a person apparently acting for another in a place where the act would properly be performed is some evidence of authority. Where a prospective customer went into the usual place of business of a steamship company, a part of whose business was to transmit funds abroad, and paid money to a person in the place of business apparently engaged in the company’s business, it was held that it could have been found that this person received the money as the agent of the company. We call attention to the language of the opinion. “The plaintiff’s intestate in company with the plaintiff, caljled at the defendant’s office, and found Wheeler there. They had a right to suppose that the defendants had control of their own premises, and that nobody would be allowed to be there, and inter-meddle with the business, without authority. He is found there, presumptively, not as an intruder but in apparent possession” . . . “and conducting himself as if he were engaged in the regular and ordinary business of the place. Persons having business at that office could not be expected to call for proof of the authority of clerks and agents whom they find there acting as such but must trust to appearances, and to the not unreasonable assumption that the defendants would not permit unauthorized persons to be so engaged”. Newman v. British & North American S. S. Co., 113 Mass. 362, 365.
If this is so, surely a person invited to enter a store to trade with the storekeeper is justified in believing that the clerks behind the counters are the storekeeper’s clerks. We think we can take judicial notice that mercantile establishments of this type have ceased to specialize. The drug store sells books; the dry. good store sells grass seed and canned goods. It is not surprising to find lunch counters *306 -in-establishments running from the five & ten cent store through drug -stores to the great department stores.
• How many customers of the ordinary prudent man type or otherwise would come to trade if notice were posted that desiring to avoid liability for contracts or injuries we have become a holding company; that we do not care to disclose the names of the operating companies or their financial standing but if you trade here you must expect no remedy from us.
Now if the situation is such that the putative principal cannot deny that the person held out is his agent, we see no reason why it does not follow that he is liable for the acts of the supposed agent as for the acts of one confessedly appointed. To say that he cannot deny that the person is agent but can deny responsibility for his acts does not make sense.
There is a weight of authority to support this conclusion.
There is this case. A railroad station at Atlantic City was under the exclusive control of the West Jersey & Sea Shore R. R. Co. On this station appeared the name of the Pennsylvania R. R. Co. and the same name appeared on the trains entering the station and on the official time tables. The plaintiff was injured by being pushed off the platform. The court said: “So far as the plaintiff and the public were concerned, the defendant was apparently exercising full rights of ownership and control over the station and all of the train service there provided. Under the circumstances, and as against the rights of a person in the plaintiff’s situation, any actual management of the station by the other company would be attributed to the existence of an agency .' on its part for the defendant corporation. This would not relieve the. defendant of its responsibility to passengers *307 who were using the station facilities by its invitation”. Pennsylvania R. R. Co. v. Hoover, 142 Md. 251, 258.
There is this case. Where the plaintiff was an employee of the defendant which had a contract to construct a pier and the defendant without notice to the plaintiff assigned its contract to its superintendent and the plaintiff was injured through the negligence of this one time superintendent, the court said: “No reason exists why the principal under an ostensible authority which through fault or negligence he has permitted should be exonerated from liability for the torts of the ostensible agent, any more than should the principal in the case of an actual agency.”,... and that the situation could be shown even if the plaintiff had not pleaded estoppel. The case was decided on another ground. Donnelly v. San Francisco Bridge Co., 117 Cal. 417, 422.
There is the case where the defendant corporation, proprietor of a department store, represented itself as carrying on the practice of dentistry in one of its departments. The plaintiff contracted for dental services and was injured by the negligence of the dentist. It appeared that the dentist was carrying on the dental business on his own account. The court seemed to think that to create liability for the tort by estoppel there must be a contract between the parties (but if that is important we have it in the pending case). In the opinion it said: “If A contracts with the ostensible agent of B for the purchase of goods, he relies not only on the business reputation of B, as to the goods he manufactures or sells, but on the pecuniary responsibility of B to answer for any default in carrying out the contract. So here the plaintiff had a right to rely not only on the presumption that the defendant would employ a skillful dentist as its servant, but also on the fact that if the servant, whether *308 skillful or not, was guilty of any malpractice, she had a responsible party to answer therefor in damages”. Hannon v. Siegel-Cooper Co., 167 N. Y. 244, see also Pugh v. Washington Railway & Electric Co., 134 Md. 196, Growcock v. Hall, 82 Ind. 202, Rhone v. Try Me Cab Co., 65 Fed. (2nd) 834, Mahoney Tank Manuf. Co. v. Mid-Continental Petroleum Corp., 49 Fed. (2nd) 146, Thompson Commentaries on Law of Negligence, sec. 7434.
We think our conclusions are supported by principles set forth in the Restatement of the Law — American Law Institute: Agency, Sections 265, 266, 267, Torts, Section 429.
We conclude that the trial judge was warranted in his findings of estoppel, Levin v. Rose, 302 Mass. 378, 382, and that his disposition of the defendant’s requests for rulings was correct.
Report dismissed.