**A & C ADJUSTERS, INC., Appellant,**

**v.**

**Allie BRAGG, Appellee.**

**No. 3576.**

District of Columbia Court of Appeals.

Submitted Nov. 16, 1964.

Decided Dec. 22, 1964.

6. Wetzel v. Ohio, 371 U.S. 62, 83 S.Ct. 111, 9 L.Ed.2d 26 (1962), and cases there cited.

7. Shima v. Brown, 78 U.S.App.D.C. 268, 140 F.2d 337 (1943).

Bernard T. Levin, Washington, D. C., for appellant.

No appearance for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

The question presented by this appeal is whether the conduct of the trial judge deprived appellant of a fair trial in a non-jury case.

Appellant brought suit under a conditional sales contract for a balance due of $822.04. Appellee answered and when the case came on for trial she appeared without counsel. Appellant's attorney invited the court's attention to the answer which contained the name and address of appellee's counsel, but appellee explained that the trial date notice had been sent directly to her. The court ruled that since the attorney had not signed the answer, he had not in fact entered an appearance, and the suggestion of appellant's counsel that the case be continued for the attorney to receive notice was overruled.

The witnesses were sworn and the court, with some informality, proceeded to question appellee. From this interrogation the court ascertained that appellee was employed by a laundry at a salary of $1.25 per hour and had no other income; that her twenty-year-old son wanted to buy a used Lincoln Continental car at a price of $1,850; that she was informed her son could not complete the purchase unless she signed "the papers"; that after signing she had no further contact with the salesman; that she did not receive the automobile or title thereto; and that she understood her son was the owner and would pay for the car.

The court then suggested to appellant's counsel that one or more possible meritorious defenses were available and asked for a settlement figure. The court commented that it could in conscience recommend to appellee that she buy back her signature without a defense if the settlement figure were reasonable; that if the figure were greater than the court thought reasonable, the case would be referred to the Legal Aid Office for defense of an indigent; and that if the demand were exorbitant, the matter would be referred to an Assistant United States Attorney.

Appellant's counsel then offered to settle the $822.04 claim for $600. The court characterized this figure as exorbitant and sent for an Assistant United States Attorney. Upon his arrival the trial judge reviewed the nature of the claim and stated that in his opinion some fraud had been practiced upon appellee. Appellant's general manager was then called and interrogated by the trial judge. The questioning developed facts relating to appellant's corporate structure and the manner in which the contract had been assigned for collection. Near the close of the proceeding the following colloquy ensued:

"THE COURT: Yes. Well I don't happen to regularly recommend a parent corporation be chastised, or spanked, for their children, but this case is dismissed for impropriety in the assignment.

"We will have no problem with that. But I do hope, sir, that you will look into this very messy matter and I will be glad, if you like now that I have this gentleman on the stand, to allow you to ask him any questions that you may wish to have asked about the governing officers of Motors Finance, the officials and managers of Eastern Acceptance Corporation, and

so on, or anything that he may know about 'Northeast Motors.'

"I will subpoena, in fact, all and various and sundry among these people, to bring them down here to provide you with any information that you may need to find out, and to what extent fraud was practiced on the defendant in this case. Because I am convinced there was fraud

"I don't believe there is anything here, except for the purpose of getting a car out momentarily, and getting her to sign the note. They had no expectation of this colored boy or the mother, for that matter, of being able to pay for a Lincoln convertible, or a Continental, or whatever it was, she being a laundress, and they just repossessed it in a hurry and sued her on the note for the $800 and some odd dollars.

"MR. LEVIN: Your Honor, may I have a return of the contract, as I have never offered it into evidence.

"THE COURT: No. I am going to impound that until Mr. Silbert [Assistant United States Attorney] tells me he has satisfied himself that he doesn't need it for any criminal prosecution.

"MR. LEVIN: Do I understand the Court is making that trial finding in a civil suit?

"THE COURT: I have made it."

Following some further discussion the case was continued until the next morning so that the Assistant United States Attorney could investigate the matter. At that time he reported he had no questions to ask appellant's witness and the finding dismissing the case for impropriety in the assignment was entered and the witness excused.

Appellant contends that these proceedings deprived it of a fair trial. Appellant argues first that it was denied the enjoy-ment and protection of its own counsel because the latter was never given an opportunity to offer evidence, elicit testimony, or argue the case. Secondly, appellant contends that the trial judge erred in openly expressing an opinion on the merits before any testimony was presented and based solely upon his sua sponte examination of appellee. Finally, appellant urges that the trial judge erred by coercing it into offering a settlement figure "on pain of calling in an Assistant United States Attorney" and by examining appellant's witness in an atmosphere of intimidation and suspicion. It is suggested that these errors would warrant reversal if considered singly but that in combination they present a glaring example of judicial misconduct.

This court has been asked infrequently to review cases of judicial impropriety. The dearth of such decisions can be attributed to the general fairness and impartiality which characterize the day-to-day work of the trial judges. However, when called upon, we have not hesitated to express strong disapproval of conduct which exceeds the bounds of judicial restraint.

In Gaddis v. Hongell, D.C.Mun.App., 117 A.2d 230 (1955), we reverse a decision of the trial court wherein the judge had taken over the direct examination, asked several questions, and then, for the first time, offered counsel an opportunity to further examine his client. We stated:

"* * * it is the right of every litigant to enjoy the full protection and effective assistance of his own counsel. That is just as important to a civil litigant as to one who is a defendant in a criminal case. * * *" Id., 117 A.2d at 232.

We noted this right is one which every judge is bound to respect and that an impingement upon it reflects an improper judicial approach. The only distinction between Gaddis and the case at bar is that here counsel was not given *any* opportunity to examine his client or to offer evidence.

Another impropriety appearing in the record was the trial judge's action in deciding the case without giving appellant's counsel an opportunity to present his argument. In Moore v. Moore, D.C.Mun.App., 135 A.2d 643, 644 (1957), this court stated:

"We think it cannot be questioned that justice is always better served and the appearance of justice assured when every party is afforded the opportunity to build his case by 'evidence and argument'. As Judge Learned Hand has said, 'Justice does not depend upon legal dialectics so much as upon the atmosphere of the court room, and that in the end depends primarily upon the judge.' Brown v. Walter, 2 Cir., 62 F.2d 798, 800 (quoted in Knapp v. Kinsey, 6 Cir., 232 F.2d 458, 467, certiorari denied 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86).

"To keep 'the atmosphere of the court room' in a clear and true state of balance, and to make certain that justice satisfies the appearance of justice, counsel should not be denied the right to assist the court by oral argument in analyzing evidence and applying the law."

A further mistake committed by the trial judge was voicing an opinion on the merits of the case before the conclusion of the testimony. In Gaddis, we commented:

"* * * This was clearly a precipitate step. Every judge should refrain from forming or expressing an opinion as to issues of fact until the case has been finally submitted to him. (Citation omitted.) This court has twice said that findings of fact should not be made either on motion of counsel or by a judge *sua sponte* until the evidence has been completed. (Citations omitted.) A plaintiff, and his

counsel as well, must surely be frustrated when told that their claim has no merit—not only before a trial is finished, but when it has barely gotten under way." Gaddis v. Hongell, supra, 117 A.2d at 232.

In the case at bar, at the very inception of the proceedings and before hearing from appellant's witnesses or counsel, the trial judge stated that in his opinion some fraud had been practiced upon appellee.

■■ Finally, we consider it highly improper for the trial judge, after indicating that he doubted the legitimacy of the transaction, to coerce appellant into offering a settlement figure satisfactory to him by threatening to call an Assistant United States Attorney. "Although efforts on the part of a trial judge to expedite proceedings and to encourage settlements out of court are ordinarily to be commended, such efforts should never be so directed as to compel either litigant to make a forced settlement." Rosenfield v. Vosper, 45 Cal. App.2d 365, 114 P.2d 29, 33 (1941).[1] In a jury case the judge will admonish the jurors that it is their duty not to form or express an opinion on factual matters until the case is finally submitted to them. Here since the trial judge took the place of the jury as the trier of fact, it was similarly his duty to refrain from forming an opinion on the issues of fact until the case was fully submitted to him. Instead, before appellant had an opportunity to present any of its witnesses, the trial judge, in appellee's behalf, compelled appellant's counsel to offer a settlement figure which he then characterized as exorbitant. Such conduct was irregular and injudicious.

■ In view of the foregoing, we hold that appellant was not given a fair trial and is entitled to a new trial.

Reversed with instructions.

---

1. Even the dissenting judge recognized that "* * * it would violate all proprieties and transgress recognized judicial ethics for a judge or other arbiter to become an active agent on behalf of one of the parties to negotiate with the other for a compromise settlement * * *."