## ERIE R. CO. v. LINNEKOGEL.

(Circuit Court of Appeals, Second Circuit. January 16, 1917.)

### No. 137.

1. MASTER AND SERVANT &⇒226(1)—INJURIES TO SERVANT—ASSUMPTION OF RISK—FEDERAL EMPLOYERS' LIABILITY ACT.

Under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1916, §§ 8657–8665]), one acting as brakeman, while assuming the risk of falling from the car on which he was riding, does not assume the risk of being thrown from the car by the negligent act of the railroad company, its agents, or officers, for such risks are not risks incidental to the employment assumed under the act.

2. EVIDENCE &⇒498½—RECEPTION OF OPINION EVIDENCE—DISCRETION OF COURT.

Much discretionary power rests in the trial judge in determining whether a statement is objectionable as opinion testimony, or receivable as a statement of ultimate fact.

3. EVIDENCE &⇒471(17)—OPINION TESTIMONY—STATEMENT OF ULTIMATE FACT.

Testimony by a brakeman, who asserted he was injured when cars were shunted against the car on which he was riding, that the cars struck his car with a crash, being subject to cross-examination, was properly received over objection that it was opinion evidence.

4. EVIDENCE &⇒553(3)—OPINION EVIDENCE—HYPOTHETICAL QUESTION.

A hypothetical question must rest upon facts in evidence at the time the question is put, including inferences properly drawn from the evidence.

5. APPEAL AND ERROR &⇒1048(3)—REVIEW—HARMLESS ERROR.

The admission of a hypothetical question, not justified by the evidence, was harmless, where the evidence at a later stage warranted the question.

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. COMMERCE ⊂⊃8(6)—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT —"DAMAGES."

Recovery in an action falling within the federal Employers' Liability Act, declaring that common carriers shall be liable in damages for injuries due to their negligence, can in no way be modified by the Workmen's Compensation Act of the state in which the accident happened (Act April 1, 1913 [P. L. N. J. p. 302]), for the word "damages," as used in the Liability Act, means what juries assess according to their own views of value, and has no reference to compensation in the nature of insurance provided by Workmen's Compensation Acts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Damages.]

7. COMMERCE ⊂⊃8(1)—STATE STATUTES—EFFECT.

Where a congressional act supersedes state statutes, a statute of the state, enacted after the passage of the congressional act, is of no effect in so far as it is within the scope of the congressional act.

8. TRIAL ⊂⊃419—MOTION TO DISMISS—WAIVER.

A defendant's motion to dismiss the complaint at the close of plaintiff's case is waived, where after denial it proceeds with the trial and introduces evidence.

In Error to the District Court of the United States for the Southern District of New York.

Action by George W. Linnekogel against the Erie Railroad Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Linnekogel, hereinafter called "plaintiff," was a brakeman in the Erie employ, and brought this action for personal injuries, alleging that he had been hurt while on one freight car and by the impact of other cars upon the one on which he was standing; such other cars having been "negligently caused and permitted to be sent down hill or grade upon the same track upon which plaintiff's car then was at a fast rate of speed, and without having any person upon said other cars to hold or control the speed" of the same.

The federal Employers' Liability Act admittedly applies to this litigation. The circumstances of injury were such that no one but plaintiff himself did or could speak as to many details. He was a member of a "yard crew" whose business it was to sort out or assemble, as might be required, freight cars either for despatch or unloading. This operation was being conducted at night on tracks having a sufficient slope or grade to permit cars, once given an impetus, to roll with accelerating speed down hill unless or until checked by brake or otherwise. Linnekogel mounted a car, which was then detached from the line in which it was, permitted to roll down hill about 380 feet, when it was stopped by plaintiff's application of brakes. He knew that other cars would come down the same incline and against the car on which he stood, and in expectation of this event he stood on top of his car and in the middle of it, with nothing to hold onto. It was too dark to see the other and approaching cars until they were within a few feet of him. Over objection and exception he testified that the other and expected cars came down the track and hit this car "with a crash" so violent that he "went up in the air," and came down with his own car "going out from underneath my feet." He testified that the result was that his car, with brakes set, was swept out from under him, so that he fell between the car he had been on and the cars that struck his "with a crash," receiving painful and permanently disabling injuries.

The "cut" which thus came down the track "with a crash" consisted of two cars, on which there was no brakeman. At a time in the trial (during the plaintiff's case) when there was no evidence from what distance the "cut" had been dropped down upon plaintiff's car, expert witnesses for plaintiff were asked a hypothetical question which assumed that said "cut" had been "sent down onto a side track or siding for a distance of about 380 feet," or the same distance that plaintiff's car had been permitted to run before plain-

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tiff stopped it; the object of the questioner being to elicit the answer (which was given) that cars traveling by gravity such a distance should have been attended by a brakeman. Plaintiff having rested, and while a motion to dismiss was pending, this expert was recalled and was asked the following: "What is the greatest distance you ever saw a loaded freight car allowed to go down that grade [i. e., somewhat similar grades in other yards where the witness had worked] without a man on top to man the brakes? A. None; ride them all." This closed plaintiff's case, and the motion to dismiss was denied.

Defendant's evidence from the other members of the yard crew was to the effect that two cars had been cut off and permitted to roll down upon plaintiff's car a distance of not over 200 feet, which was common, ordinary, and safe practice. The majority of this court consider that there was some testimony elicited from defendant's witnesses tending to show that the "cut" had been permitted to roll down grade a greater distance than 200 feet, and perhaps as much as 380 feet. With this the writer does not agree. At the close of all the evidence defendant again made a motion to dismiss or to direct a verdict; this having been denied, and plaintiff having a verdict, this writ was taken.

The injury occurred in New Jersey, and at the time thereof the Workmen's Compensation Act of that state was in force. The assignments of error assert in substance: (1) Plaintiff was injured by an assumed risk of his employment; (2) it was error to permit plaintiff to characterize the impact of the "cut" upon his car as a crash; (3) the hypothetical question put to plaintiff's experts was not warranted by the evidence, and therefore its allowance was error; (4) the Workmen's Compensation Act of New Jersey applied, at least in so far as to regulate the amount of recoverable damage; (5) the complaint should have been dismissed at the close of plaintiff's case.

Stetson, Jennings & Russell, of New York City (William C. Cannon and Coulter D. Young, both of New York City, of counsel), for plaintiff in error.

Sydney A. Syme, of Mt. Vernon, N. Y., for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above): [1] 1. It is true that one suing under the federal Employers' Liability Act is held to assume the risk of his employment, but that does not include risks incident to the negligence of defendant's agents, employés, or officers. Boldt v. Pennsylvania R. R. Co., 218 Fed. 367, 134 C. C. A. 175; New York, etc., Co. v. Vizvari, 210 Fed. 122, 126 C. C. A. 632, L. R. A. 1915C, 9. As applied to this case, the risk of falling off a car properly managed or handled was a risk of plaintiff's employment; but the risk of being thrown off his car by the negligent act of his employer or any one for whom that employer was responsible was not such risk.

[2, 3] 2. To describe the meeting of two cars as a crash, or a violent crash (as was also done by the plaintiff while testifying), is to state an opinion or a result. Where to draw the line between permissible statements of this nature and those which cannot be approved is not always easy, and is a matter concerning which much discretionary power exists in the trial judge. Standing alone, the words complained of are of little or no probative force, yet they represent an endeavor to convey the idea of swift and ungoverned approach, and if the witness had stated what turned out to be the poorest of guesses as to the speed of the advancing cars, no one would have challenged his right so to testify. Subject to cross-examination, we think the words were rightly permitted to stand as well within the reasonable rule of the cases

collated in Wigmore on Evidence, §. 1977. See, also, Beers v. West Side, etc., Co., 101 App. Div. 308, 91 N. Y. Supp. 957.

[4] 3. A hypothetical question must rest upon facts in evidence at the time the question is put. Nothing beyond the reasonable effect of such evidence can be embodied in the question, though the effect of the evidence includes inferences properly drawn therefrom. The question complained of was confessedly put because it was thought a "fair inference" that the "cut" of cars that was said to have crashed into plaintiff's car came from the same point as had the plaintiff's; i. e., had rolled down the same distance. Considering the nature of the freight yard in which work was going on, with its multitude of switches, the absence of testimony as to what cars, or how many, were to be switched, or from or to what points, we do not think the inference legitimate, and consider the allowance of the question, at the time it was asked, error.

[5] But a majority of the court are of opinion that no harm was done by the question, because there subsequently appeared testimony that would have justified the question at a later stage of the case; and the writer of this opinion thinks that plaintiff's experts by finally testifying that permitting any car to run down hill at night unmanned, for any distance, was (in effect) bad railroading, put plaintiff's case on a different ground, but still consistent with the pleading. This last testimony was not objected to, and when it had been given the answer to the hypothetical question became (in my judgment) both immaterial and harmless.

[6, 7] 4. The assertion that a recovery under the federal act here invoked can be in any way modified by the Workmen's Compensation Act of the state in which the accident happened certainly lacks authority. It seems to us unsustainable upon the reason of the matter. It is the essential nature of any compensation act that it does not depend upon or is not invoked as the result of an act of negligence. What is assured to the workman thereby is not compensatory damages for a tort, but a species of insurance against hurts received in the line of occupation without (perhaps) anybody's fault. But section 1 of the Liability Act (35 Stat. 65) declares that common carriers shall be liable "in damages" for injuries due to their "negligence." These words refer to a course and habit of litigation only too well known for some generations and must be interpreted accordingly. Damages mean what juries assess according to their own views of value, and the act authorizing such damages supersedes all state laws relating to the same subject. Mondou v. New York, etc., Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Seaboard Air Line v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. It must be equally true that such legislation is unaffected by any subsequent state act, for what cannot survive congressional action certainly cannot control it.

[8] 5. When defendant's motion to dismiss the complaint at the close of the plaintiff's case was denied, the defendant was bound to elect whether to go on and introduce evidence or rest upon the infirmity of the case as made by plaintiff. It went on, and thereby waived the right to complain in this court of the denial of the motion.

Union Pacific, etc., Co. v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756, 38 L. Ed. 597. Nor is the rule different in this state. Porges v. United States, etc., Co., 203 N. Y. 185, 96 N. E. 424.

It follows from the foregoing that the judgment must be affirmed, with costs.