HUGH McDONALD *vs.* DR. McKNIGHT, INC.

Suffolk.     December 4, 1923. — February 27, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Dentist.* *Agency*, Scope of employment. *Corporation*, Officers and agents. *Negligence*, Of corporation engaged in dentistry.

At the trial of an action against a corporation engaged in dentistry, there was evidence tending to show that the defendant represented by signs that it was conducting a dental office, that the plaintiff, desiring dental advice and assistance, entered the office where, after stating his condition to a cashier, another employee, who was a dentist registered under G. L. c. 112, § 50, and then was in charge of the office, called an assistant, who was not so registered, " to take care of him; " that at

the direction of the person so called the plaintiff went into a side room where, after examination, such person extracted the tooth, but did it in a negligent manner, causing injury to the plaintiff. The defendant contended that the act of the extractor of the tooth was not an act within the scope of his employment and that the direction of the registered dentist in charge did not make it such an act. *Held,* that

(1) The question, whether the extractor of the tooth was acting within the scope of his ostensible employment as between the parties, was for the jury;

(2) The plaintiff had a right to trust to appearances and to the not unreasonable assumption that the defendant would not permit unauthorized persons to appear to be acting as his agents; and he could not be expected nor was he required to ask for proof of the authority of the cashier or of the registered dentist or of the extractor of the tooth;

(3) The defendant could not avoid liability by evidence that the extractor's authority was limited.

Tort for personal injuries alleged to have been caused by negligence of servants or agents of the defendant, a corporation, in extracting a tooth of the plaintiff. Writ dated March 15, 1920.

In the Superior Court, the action was tried before *King,* J. Material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings:

" 5. If Hyman Friedman did the work upon the plaintiff then upon the evidence and the pleadings the plaintiff cannot recover in this action.

" 6. If the plaintiff contracted with the defendant for the extraction of a tooth, then the defendant was under no other obligation than to properly extract the tooth."

The above requests of the defendant were denied.

The plaintiff asked for the following rulings:

" 6. The mere fact that Hyman Friedman's general duties consisted of laboratory work does not relieve the defendant corporation from liability if at the direction of a person authorized to give directions he did a specific act outside of laboratory work in the course of the defendant's business, in a negligent manner.

" 7. The law imposed a duty upon the defendant to see to it that no person in its employ not properly registered and admitted to practise dentistry operated upon or even examined, with the intention of operating upon the teeth

or jaws of the plaintiff, and if doing or permitting this to be done, has a casual [*sic*] connection with the injuries sustained by the plaintiff, the jury is warranted in finding negligence on the part of the defendant corporation.

" 8.   If the jury finds that the defendant violated the statute regulating the practice of dentistry, this fact although not conclusive of negligence, may be considered by the jury in passing upon the question, as to whether or not the defendant was negligent.

" 9.   If the jury find upon the evidence that Dr. Campbell, in the absence of Dr. McKnight, was in charge of the business of the office in so far as it concerned the operative work upon patients and that Dr. Campbell directed Hyman Friedman to extract the plaintiff's tooth, and Friedman did extract the tooth, then the defendant corporation may be held liable for any negligence on the part of Friedman committed in the process of such extraction."

" 11.   There is evidence upon which the jury may find that on January 13, 1920, Dr. Campbell, during the absence of Dr. McKnight, had full authority in the premises in so far as it concerned work upon patients' teeth, and if Campbell ordered or directed Hyman Friedman to extract or treat the plaintiff's teeth and such work was done by Friedman in a careless manner, then the defendant may be held liable for damages in this action provided the plaintiff was in the exercise of due care."

The above requests of the plaintiff were granted, subject to exceptions by the defendant.

The trial judge submitted to the jury the following special question:   " Who applied the anesthetic and extracted the plaintiff's tooth? "   The   jury   answered:   " Hyman Friedman by orders of Dr. John G. Campbell."

The jury found for the plaintiff in the sum of $3,000. The defendant alleged exceptions.

*R. L. Mapplebeck*, for the defendant.

*E. A. Whitman*, (*C. D. Driscoll* with him,) for the plaintiff.

BRALEY, J.   It appears from answers to interrogatories propounded by the plaintiff and other evidence introduced at the trial, that the defendant, prior to and during the

period covered by the record, operated a dental office in the city of Boston, with signs on the window which read, " Dr. McKnight, Inc.   Nap a minute, painless extraction. Low priced dentistry."   The plaintiff, suffering from toothache, entered the office on January 13, 1920, for relief, and had a tooth extracted.   But the operation, as the jury could find, was so negligently, unskilfully and improperly performed as to cause the plaintiff much subsequent pain, with symptoms of possible, if not actual, necrosis of the jaw, which were relieved and a cure effected after prolonged surgical treatment.   The defendant's president, Dr. A. J. McKnight, a registered dentist, for whom the corporation was named, had the general charge and supervision of the business.   The dental staff on the day in question consisted of two registered operating dentists, Dr. Campbell and Dr. Good, with whom in the office of the defendant was a cashier, while the remaining employee, Hyman Friedman, worked in the laboratory on rubber plates.   The twenty-third interrogatory, " State whether or not the plaintiff's mouth or teeth were treated by a dentist duly registered, and admitted to practice," was answered, " Our records show that a man by the name of Hugh McDonald had a tooth extracted on that day by Dr. Campbell, a registered dentist."   But notwithstanding this unequivocal and positive statement, the evidence showed and the jury were warranted in specially finding, that the tooth was extracted by Friedman acting under an order from Dr. Campbell, who they further could find was in charge of the office.   It also was undisputed, that the plaintiff paid the cashier the price charged, and was given a receipt.

While numerous exceptions were taken by the defendant to the admission of evidence and to the rulings of the presiding judge, we shall consider only the exceptions which have been argued, treating the other exceptions as waived.

It is contended, that Friedman's act was not within the scope of his contract of employment, and, if it was not, then the direction of Dr. Campbell, even if he was a registered dentist, to Friedman, did not bring the act of Friedman within the limitation of his employment.

By St. 1915, c. 301, § 9, in force on January 13, 1920, now G. L. c. 112, § 49, " No person shall conduct a dental office under any name other than that of the dentist actually owning the practice, or a corporate name containing the name of such dentist." And by §§ 10, 14, now G. L. c. 112, § 50, any person who carries on a dental practice or business, or who by himself, his servants or agents, or by contract with others performs any operation on the human teeth or jaws, or who advertises by sign, or otherwise indicates that he by contract with others or by himself, his servants or agents will perform any operation, or make examination with the intention of performing or causing to be performed any operation on the human teeth, shall be deemed to be practising dentistry within the meaning of the statute. If any person without being registered, directly or indirectly practises, or attempts to practise dentistry without being duly registered, or any registered dentist, or incorporated dental company employs or permits a person to practise dentistry unless such person is registered, he is liable to a fine, or imprisonment, or both. If the offender is a corporation, it is punishable by fine, and its officers, owners or managers concerned in the violation, are subject to the penalty of fine, or imprisonment, or both. See G. L. c. 112, § 52.

The defendant represented by signs that it was conducting a dental office, and there was evidence for the jury that the plaintiff, desiring dental advice and assistance, entered the office, where, after stating his condition to the cashier, he sat down and waited until a young man came out of a side room and talked with him. Dr. Campbell then came in, called and told Friedman " to take care of him." At the direction of Friedman the plaintiff went into a side room where, after examination, Friedman extracted the tooth. The plaintiff had the right to assume that Dr. Campbell and Friedman, who each wore dental uniforms, and the cashier, were employees of the defendant engaged in conducting its business as advertised. The defendant however offered evidence that Friedman was actually employed only in laboratory work. But the jury were to determine,

whether, as between the parties, Friedman was acting within the scope of his ostensible employment. The plaintiff could not be expected, nor was he required to ask for proof of the authority of the cashier, or of Dr. Campbell or of Friedman, all of whom he found at the office engaged in the manner previously described. He had the right to "trust to appearances, and to the not unreasonable assumption that the defendant would not permit unauthorized persons to be so engaged." The defendant under such circumstances could not avoid liability by evidence that Friedman's authority was limited. *Newman* v. *British & North American Steamship Co.* 113 Mass. 362, 365. *Rintamaki* v. *Cunard Steamship Co. Ltd.* 205 Mass. 115, 118, 119. *Danforth* v. *Chandler*, 237 Mass. 518. *Hosher-Platt Co.* v. *Miller*, 238 Mass. 518, 524. And the instructions on this question were sufficiently favorable to the defendant. The jury also were to determine on the evidence, whether Dr. Campbell was in charge of the office during the absence of Dr. McKnight, and whether his directions to Friedman were within the scope of his duties.

It follows, that the plaintiff's ninth and eleventh requests, which were given, as well as the last request, which was a modified form of the ninth request, disclose no error of law. *Hollidge* v. *Duncan*, 199 Mass. 121, 123. *Sandon* v. *Kendall*, 233 Mass. 292. *Gerrish Dredging Co.* v. *Bethlehem Shipbuilding Corp. Ltd.* 247 Mass. 162.

The defendant moreover by reason of the contractual relations between the parties, was bound in the discharge of its duty to furnish the plaintiff with proper care and treatment. If the jury found that this duty had not been performed, it was responsible for the harmful consequences, quite apart from any question of negligence. *Vannah* v. *Hart Private Hospital*, 228 Mass. 132, 137, and cases cited; *Hannon* v. *Seigel-Cooper Co.* 167 N. Y. 244.

The exceptions must be overruled, and it is

*So ordered.*