## BROWN v. WALTER.
### No. 167.

Circuit Court of Appeals, Second Circuit.
Jan. 16, 1933.

Walter S. Fenton and Fenton, Wing, Morse & Jeffords, all of Rutland, Vt., for appellant.

Harry C. Shurtleff, of Montpelier, Vt., for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This case arises out of injuries suffered by the plaintiff from the collision of a motor car which he was driving with a telegraph pole beside the roadway. The theory of the action was that the plaintiff was obliged in an emergency to leave the road to escape the oncoming car of the defendant, which had turned out to the left to pass another going in the same direction, and which the plaintiff could not otherwise avoid. The defence was that while the defendant did turn out to the left to pass, he at once saw the plaintiff's approaching car, and turned back in time to allow the plaintiff to keep in the road and pass him. That the plaintiff became confused, supposed there would be a collision, needlessly turned off the roadway and collided with the pole. The issues were clearly for a jury, and the evidence admitted a recovery; were it not for the incidents of the trial, we should not disturb the result.

The defendant's chief complaint is in the persistent effort of the plaintiff to get and

keep before the jury the fact that he was insured; especially in his summation, which charged that the insurer had suborned the defendant and his companions in the car to perjure themselves. This issue requires us to go into a little detail. The plaintiff called the defendant as his witness, and after getting his story, asked whether he had made a report to the state inspector, which was already in evidence, following this by inquiring whether he had not been interviewed by one Aikey, an insurance agent. As there was no attempt to establish any contradiction between what he said to the agent and what he said on the stand, the evidence was clearly incompetent, and could only have been meant to introduce a forbidden element into the case. The plaintiff's wife was then called, and testified that after the accident the defendant was at a house where she was being revived, and where among other things the defendant had said that the car belonged to his father and was insured. This again, though not shown to be deliberate, was extremely prejudicial, and the defendant objected at once, but the judge would not exclude it. When later the witness repeated it, the judge again allowed the testimony to stand, contenting himself with an admonition that the jury should hold itself impartial in spite of the defendant's insurance. Taggart v. Keebler, 198 Ind. 633, 154 N. E. 485. The same testimony came out from the plaintiff while he was on the stand; this time, the defendant unsuccessfully moved for a mistrial.

■ On his defence the defendant called his companion in the car, a boy named Dudley, who told a story corroborating the defendant's own. On cross-examination, with an altogether unnecessary elaboration had the matter been competent at all, the plaintiff brought out that this witness had signed a statement about the accident for an agent of the insurance company which he had not read, though he had written at its foot that he had. The defendant gave the statement to the plaintiff; it is in evidence; it does not contradict the witness's testimony as to the accident. The only even colorable bearing of the questions was to affect the witness's credibility by showing that he was reckless in what he would vouch for, and it was worth very little even for that. As we have said, the statement corresponded with the testimony; he was not shown to have been ignorant of its contents; it might have been prepared in his presence and he merely assumed it to be correct. The fact that he had written that he read it had only the faintest possible importance in impeaching him; and

that purpose could have been fulfilled, without bringing out that the statement was prepared by the insurer. This does not appear, at least on the copy before us; if it had, the testimony was of too little weight to justify its admission at the cost of bringing out the fact of insurance.

■ All this would have been enough to require a mistrial, had it stood alone, without considering the plaintiff's summation. The first testimony of the plaintiff's wife, if her attorney had shown that it took him unawares, might possibly not be enough, but its repetition by her and the plaintiff was altogether unexcused except by the earlier complaisance of the judge. The question to the defendant was plainly deliberate, and with the cross-examination of Dudley forecloses any doubt. However, it must be owned that the fact of the defendant's insurance properly got before the jury from another source. He called a doctor who had examined the plaintiff and his wife—her case and the plaintiff's were tried together—and who was in the insurer's employ. This witness was evasive in acknowledging his employment, which was a proper subject of inquiry. Mideastern Cont. Corp. v. O'Toole, 55 F.(2d) 909 (C. C. A. 2). Even so, the questions could have been directly put, and if the witness was evasive, might then have been pressed. The cross-examination as to the witness's employment was not as straitly confined to its legitimate purpose as it should have been, and after it was concluded, the objectionable matter was again gratuitously brought in. The right to cross-examine was abused.

■ We should therefore hardly have passed the verdict, had the matter rested there; but the injustice became much more serious, when the plaintiff came to sum up. Then he spun a web of suspicion of which there was no warrant whatever. He argued with much warmth that the whole defence had been fabricated by the insurer—transparently veiled by such provocative phrases as an "unseen hand," and an "unseen force," and the like. This had not the slightest support in the evidence; it was unfair to the last degree. Nobody can read the summation without being satisfied that the real issues were being suppressed, and the picture substituted of an alien and malevolent corporation, lurking in the background and contriving a perjurious defence. A judge, at least in a federal court, is more than a moderator; he is affirmatively charged with securing a fair trial, and he must intervene sua sponte to that end, when necessary. It is not always enough that the other side

does not protest; often the protest will only serve to emphasize the evil. Justice does not depend upon legal dialectics so much as upon the atmosphere of the court room, and that in the end depends primarily upon the judge.

It is, indeed, not common to reverse for such reasons, but here we must intervene. The courts of Vermont have been especially zealous in keeping out reference to the fact that the defendant is insured. In Ryan v. Barrett (Vt.) 162 A. 793, answers like those of the plaintiff and his wife alone resulted in a mistrial; in Ronan v. J. G. Turnbull Co., 99 Vt. 280, 131 A. 788, a caution to the jury did not cure the error. In Landry v. Hubert, 100 Vt. 268, 137 A. 97, a mere intimation of insurance in the summation upset the verdict. The federal courts, so far as we can find, have adopted the same attitude. In James Stewart & Co. v. Newby, 266 F. 287, 295, 296 (C. C. A. 4), the evidence was thought so prejudicial that, once in, no caution would serve to cure it. In Brooke v. Croson, 61 App. D. C. 159, 58 F.(2d) 885, the sole ground for reversal was that it had crept in. The courts of New York also are severe in their treatment of such efforts. Simpson v. Foundation Co., 201 N. Y. 479, 95 N. E. 10, Ann. Cas. 1912B, 321; Akin v. Lee, 206 N. Y. 20, 99 N. E. 85, Ann. Cas. 1914A, 947; Rodzborski v. American Sugar Refining Co., 210 N. Y. 262, 104 N. E. 616. Cosselmon v. Dunfee, 172 N. Y. 507, 65 N. E. 494, shows an earlier and apparently a less drastic attitude. While it is quite true that there are jurisdictions which allow the inquiry, we cannot agree. There can be no rational excuse, except the flimsy one that a man is more likely to be careless if insured. That is at most the merest guess, much more than outweighed by the probability that the real issues will be obscured. Sutton v. Bell, 79 N. J. Law, 507, 77 A. 42; Sawyer v. J. M. Arnold Shoe Co., 90 Me. 369, 38 A. 333; Edwards v. Laurel Branch Coal Co., 133 Va. 534, 114 S. E. 108. In the case at bar, save for the cross-examination of the doctor, there was no excuse for even an intimation that the defendant was insured; if that witness is not called upon the next trial, there will be none whatever, and unless the insurance is scrupulously kept from the jury, a mistrial should be declared. The prevalent knowledge that in such cases insurance is usually taken, is a hard enough handicap at best; it is difficult in any event to get a decision on the real issues.

A subsidiary question arises from an instruction to the jury as to the defendant's liability. There is a statute in Vermont (Acts 1925, No. 70, § 68, subd. 4), forbidding cars to pass ahead of others unless the way on the left is clear of approaching traffic. While the statute makes it a wrong to do so, in defining the duty imposed, the Supreme Court of that state has held as to similar provisions that the rule is to be read with the condition that in the particular case the conduct must be imprudent. Landry v. Hubert, 101 Vt. 111, 141 A. 593, 63 A. L. R. 396; Jasmin v. Parker, 102 Vt. 405, 148 A. 874. So here, it was not enough for the judge merely to say, as he did, that the defendant was guilty if he turned out when the way was not clear of approaching traffic. He should have told them that the defendant was guilty only if, when he turned out, the approaching car was so near that a careful driver would not have done so; but would have anticipated danger. Steele v. Fuller (Vt.) 158 A. 666, did not modify this doctrine; it merely held that the proscribed conduct made a prima facie case which must be explained. Here the defendant went to his proof, and gave evidence that the car was not dangerously near when he turned out. That opened the issue, and put on the plaintiff the burden of showing the opposite.

Judgment reversed; new trial ordered.