Vassiliki **ALEXANDRIDIS** et al.,
Plaintiffs, Appellants,

v.

John **JEWETT** et al., Defendants,
Appellees.

No. 6937.

United States Court of Appeals
First Circuit.

Jan. 24, 1968.

---

Albert P. Zabin, Boston, Mass., with whom Edward M. Swartz, Boston, Mass., was on brief, for appellants.

John F. Dunn, Boston, Mass., for all appellees, with whom Robert G. Conley, Jacob J. Locke and Ficksman & Conley, Boston, Mass., were on brief for appellees Jewett and Driscoll.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is an appeal from judgments entered on jury verdicts and a directed verdict for defendant physicians in a diversity action sounding in tort and contract. Error is principally alleged in the district court's direction of a verdict in favor of defendants Jewett and Driscoll on the negligence (malpractice) count; in the court's instructions on the contract count; and in other rulings during trial and on requests for instructions.

The case arises from unhappy results of emergency surgery performed by a first year resident in obstetrics to facilitate the birth of a baby in the absence of two doctor-partners who had undertaken to perform the delivery. Undisputed are the following facts. The plaintiff, Mrs. Alexandridis,[1] was uneventfully delivered of her first child by one of the defendants, Dr. Jewett—an experienced obstetrical specialist. She engaged him to deliver a second child and later agreed to accept either his services or those of another specialist, Dr. Driscoll, who had become a partner of Dr. Jewett. Delivery was expected on or about May 16, 1964. Examinations by both physicians during the course of her pregnancy disclosed plaintiff to be a normal, healthy female although Dr. Jewett's office records dated April 28, 1964 indicate a finding that her cervix was "very soft, indicative of rapid delivery after onset of labor."

From this point on the facts are largely disputed. On the morning of May 7, 1964, sometime between 2:45 and 3:30 a. m., plaintiff's husband called Dr. Jewett at his home and, according to Mr. Alexandridis' testimony, told him that plaintiff was in labor, that "she's a nurse, and she must know what she is talking about". Dr. Jewett testified that Alexandridis said only that his wife was experiencing discomfort and that contractions were irregular. In any event, he ordered that plaintiff be taken to the hospital "immediately", informed his caller that it was Dr. Driscoll's night on duty and said (1) that Dr. Driscoll would meet them at the hospital (Mr. Alexandridis' testimony); or (2) that the nurses would call Dr. Driscoll after plaintiff had arrived and her condition was evaluated (Dr. Jewett's testimony); or (3) that Dr. Driscoll was to be called when further medication was necessary (pre-partum order sheet).

1. While her husband is also a plaintiff-appellant, we shall refer only to Mrs. Alexandridis as appellant.

Plaintiffs claim to have arrived at the hospital at 3:45 a. m. The defendants assert that plaintiffs did not enter the hospital until 4:45 a. m., an hour later. There is evidence in the record which supports both accounts. The Consent to Operation form, which was completed in the lobby before plaintiff was taken to maternity, records the time as 3:45 a. m., while the official Admission Register lists it as 4:45 a. m. Mr. Alexandridis testified that the hospital lobby clock read 3:48 a. m. when he and his wife arrived. The evidence shows that he remained in the lobby with his wife between five and twenty minutes, after which time, admitting papers complete, he left the hospital with their first child as his wife was being led to an elevator.

Dr. Leventhal, a first year resident in obstetrics, testified that he was waiting for appellant on the fifth floor and first saw her as she came off the elevator at 4:45 a. m. A brief examination in the corridor suggested that plaintiff was at term and prompted Dr. Leventhal to order that she be brought to the nearest delivery room. A more detailed examination disclosed that her cervix was fully dilated and that the baby's heartbeat was irregular, indicating fetal distress. Concluding that plaintiff should be delivered without delay, Dr. Leventhal prepared the patient and performed an episiotomy or incision in the perineum between the vagina and the anal sphincter to allow more room for delivery without damage to the baby or the mother's structures. Testimony conflicts as to whether Dr. Leventhal cut into the anal sphincter, as plaintiffs assert, rather than short of it, or whether the emergence of the infant's head caused a tear or extension into the sphincter, as defendants contend. In any event, after delivery of the child at 4:59 a. m. the sphincter had suffered a disruption. All parties agree that an incision into the sphincter would have been improper under the circumstances of this case.

After delivery Dr. Leventhal attempted to repair the episiotomy and associated disruption. Dr. Driscoll testified that he entered the delivery room soon after he arrived at the hospital between 5:00 and 5:15 a. m. and that Dr. Leventhal was in the process of placing superficial sutures to complete the repair.[2] Several days later the stitches opened, infection set in and the repair was rendered ineffective. Two subsequent operations to correct plaintiff's condition also failed and she has since been left with chronic rectal incontinence.

Plaintiff brought this action in the district court alleging in two counts, numbered I and III, that Doctors Jewett, Driscoll and Leventhal, their agents and servants, negligently failed to apply and exercise reasonable skill and attention in her delivery, care and treatment. Doctors Jewett and Driscoll were further charged in another count (Count II) with a breach of their contract by failing to care for plaintiff or to deliver her despite the fact she had performed all obligations required of her.

At the close of plaintiff's case-in-chief all three defendants moved for a directed verdict pursuant to Fed.R.Civ.P. 50. The court, reserving judgment on the motions at that time and again when they were renewed at the close of all the evidence, permitted the case to go to the jury. Verdicts were returned in favor of Doctors Jewett and Driscoll on Count II (breach of contract) and in favor of Dr. Leventhal on Count III (negligence). The jury was unable to agree on a verdict as to Count I, charging Doctors Jewett and Driscoll with negligence, but the court, acting on the reserved motions, ordered that one be directed in their favor.

### Count I

We will consider first plaintiff-appellant's contention that the district court erred by directing a verdict in favor of appellees Jewett and Driscoll on Count I. The substantive law of Massa-

---

2. Dr. Driscoll stated that he was called at an unspecified time, left his home immediately for the hospital—proper practice, he testified, given the message he had received—and reached the hospital within twenty minutes.

chusetts governing the duty owed by a physician to his patient is carefully defined in Riggs v. Christie, 342 Mass. 402, 405–406, 173 N.E.2d 610, 613 (1961), as follows:

> "[T]he undertaking of a physician as implied by law is that he possesses and will use the reasonable degree of learning, skill and experience which is ordinarily possessed by others of his profession in the community where he practises, having regard to the current state of advance of the profession * * * and that he will in cases of doubt use his best judgment as to the treatment to be given in order to produce a good result. He does not warrant a cure."

In *Riggs* the alleged negligence lay in the decision of a doctor not to see his patient after he had received telephone reports of pain and fever from the patient's parents when in fact peritonitis had developed. The court affirmed the setting aside of plaintiffs' verdicts, concluding that the symptoms described were not peculiar to peritonitis and that the doctor had acted reasonably in the light of known facts and reported symptoms.

■ Our case presents a different factual picture. Viewing the evidence in the light most favorable to appellant, and giving her the benefit of all favorable inferences, Cross v. M. C. Carlisle & Co., 368 F.2d 947 (1st Cir. 1966), the jury here could have found that Dr. Jewett knew appellant was a surgical nurse and, because of a soft cervix, would deliver soon after the onset of labor; that appellant's husband, in his telephone conversation with Dr. Jewett, described his wife as having reported herself in labor; that the doctor, on the basis of these facts and the proximity of the scheduled delivery date, should have known birth could be imminent; and, having in mind that it would take Dr. Jewett or Dr. Driscoll at least 20 minutes to reach the hospital, that Dr. Jewett did not act reasonably when he did no more than leave instructions with a nurse to call his partner after appellant was evaluated or, if the prepartum order sheet were deemed accurate, when appellant needed further medication.

■ Moreover, the jury could have found that appellant arrived at the hospital at 3:45 a. m., and that Dr. Driscoll arrived at 5:00 or 5:15 a. m. It could draw from this combination of facts either the conclusion that no call was made to Dr. Driscoll until after appellant had been at the hospital for about one hour or the conclusion that he had been promptly called but had delayed his own departure for the same length of time. On the former assumption, the jury could have found that Dr. Jewett's instruction to delay calling Dr. Driscoll was unreasonable under the circumstances; on the latter, the jury could have found that Dr. Driscoll had violated what he conceded to have been proper practice, i. e., prompt departure.[3] We accordingly find that there was sufficient evidence of negligence entitling appellant to a jury determination on Count I.[4]

3. We are mindful of the admonition in Riggs v. Christie, supra, 342 Mass. at 407, 173 N.E.2d at 613, that "[i]n the usual case where matters of professional judgment are involved, a tribunal of fact, whether court or jury, unassisted by expert testimony or evidence from the profession concerned, should not retrospectively substitute its judgment for that of the person whose judgment had been sought and given." But this case seems to us, insofar as the reasonableness of Dr. Jewett's instruction to the hospital is concerned, as one of those "exceptional cases where a court or jury without expert assistance may find a breach of the physician-patient relationship * * *." 342 Mass. at 407, 173 N.E.2d at 614. That is, a jury viewing facts most favorably to appellant would have been justified in concluding that to postpone a call pending further evaluation or need for further medication was unreasonable. As to the possible finding of delay in Dr. Driscoll's departure, it is Dr. Driscoll himself who testified to the proper practice of prompt departure.

4. Appellees Jewett and Driscoll have argued that the directed verdict in their favor was required for the reason that a jury finding for them on Count II (breach

## Count II

Appellant also appeals from the jury's verdict in favor of Doctors Jewett and Driscoll on Count II. Objection lies in a portion of the court's charge that should the jury find that Doctors Jewett and Driscoll, through lack of proper diligence, abandoned appellant by failing to meet the standard of their contract with her (i. e., to deliver her personally), and that as a consequence she was left in the care of Dr. Leventhal, both doctors are "responsible for any negligence of Dr. Leventhal at any stage of Dr. Leventhal's care." [5]

Appellant urged then and argues now, citing McDonald v. Dr. McKnight, Inc., 248 Mass. 43, 142 N.E. 825 (1924), that this is not the law in Massachusetts. We agree. McDonald involved an individual who, suffering a toothache, entered defendant's establishment for treatment. A licensed dentist directed the patient to an employee not licensed to practice who negligently extracted his tooth. The Supreme Judicial Court affirmed a jury verdict for plaintiff and held that the defendant, by reason of the contractual relationship which arose between the parties, was bound in the discharge of its duty to furnish plaintiff with proper care and treatment. It further stated that if the jury found that that duty was not performed the defendant was "responsible for the harmful consequences, quite apart from any question of negligence." 248 Mass. at 48, 142 N.E. at 827.

■■ To condition contract liability here on the negligence of a third person is essentially to say to appellant that while she contracted for delivery of her baby by one of two highly skilled and experienced doctors, i. e., for specialized care, she in effect received nothing more than an undertaking that the care provided would meet the ordinary standards of the community. If either Dr. Jewett or Dr. Driscoll had performed the operation, the standard of care would have been "the care and skill commonly possessed and exercised by similar specialists in like circumstances." Gabrunas v. Miniter, 289 Mass. 20, 21, 193 N.E. 551, 552 (1935); see Barrette v. Hight, Mass. Adv.Sh. (1967) 1431, 1435, n. 5, 230 N.E. 2d 808; cf. Small v. Howard, 128 Mass. 131 (1880). We cannot understand why a specialist should be subjected to a less onerous burden when he abandons an undertaking than when he attempts to fulfill it. We think the jury should have been instructed, as appellant requested, that if it found that the added skill possessed by Dr. Jewett and Dr. Driscoll would have avoided the injury, contract liability would result.[6]

---

of contract) and for Dr. Leventhal on Count III (negligence) left no evidence of negligence or causation. What we hold hereafter destroys the basis of this argument.

5. After the court instructed the jury as noted above, it added that should the jury find that the two partner-doctors breached their contract with appellant they are "* * * liable for the whole course of care which Dr. Leventhal gave. That is to say * * * the responsibility * * * includes the cutting as well as the repair." Later on the court defines negligence in terms of community practice and again concludes that Doctors Jewett and Driscoll are accountable for damages only upon a finding of breach and abandonment by them and negligence by Dr. Leventhal. In the portion of their brief directed to the appeal on Count II, appellees rely exclusively upon the "whole course of care" language, ignoring that which precedes and follows it, and assert that "[a]t no time did the trial judge charge the jury that the plaintiff was required to prove the negligence of a third person under Count II." Having examined the whole charge, we cannot read appellees' selected reference as anything more than an explanation that once liability attaches—i. e., upon a finding of breach, abandonment and negligence—the scope of such liability is not limited to any single phase of Dr. Leventhal's care.

6. If appellees' argument, supra n. 4, is to be construed as saying that the jury's verdict for defendants on Count II (breach of contract) reflected a unanimous finding of no abandonment—which would have made unnecessary any consideration of Dr. Leventhal's negligence— we suggest that the sequence and timing of the verdicts and final deadlock indicate otherwise. The jury first announced its verdict for defendants Jewett and Driscoll

### Count III

Appellant appeals as well from a ruling of the court disallowing the following hypothetical question addressed to Dr. Driscoll and intended to elicit evidence of Dr. Leventhal's negligence:

"If a laceration or extension is recognized and repaired, excellent healing and normal function almost always occurs, but rectal incontinence may result if the torn ends of the muscle are not approximated, is that so \* \* \*? "

Upon objection by Dr. Leventhal's counsel on the ground that there was no evidence in the record that the muscle ends had not been approximated, the court asked appellant's counsel if there was any such evidence and, if not, whether counsel would introduce such evidence at a later time. Counsel suggested that, in view of Dr. Jewett's earlier testimony that if the ends are not approximated one could have the very problem from which appellant suffers, there was some evidence of this, but said in response to another question by the court, "Whether on the total evidence we are going to be entitled to that inference or not [that the ends were not approximated] will depend upon what we can learn. \* \* \* "

■ We feel on these facts, in an area where the exercise of judicial discretion is particularly appropriate, Taylor v. Reo Motors, Inc., 275 F.2d 699, 703 (10th Cir. 1960); 2 Wigmore, Evidence § 672 (3d ed. 1940), that the question was properly excluded. Before a hypothetical question is properly allowed each premise must be supported by evidence already in the record or said to be forthcoming. Fort Worth & Denver R.R. Co. v. Janski, 223 F.2d 704, 706 (5th Cir. 1955); Commonwealth v. Russ, 232 Mass. 58, 73, 122 N.E. 176 (1919), cited approvingly in Uberto v. Kaufman, 348 Mass. 171, 173, 202 N.E. 2d 822 (1964). The record before us is barren of any evidence that the muscle ends were not approximated. Appellant's argument that Dr. Jewett's testimony constitutes sufficient proof of that fact is wide of the mark. To suggest that, since a failure to approximate muscle ends may result in rectal incontinence, Dr. Leventhal failed to approximate the ends here because appellant is incontinent is to lean on an imperfect syllogism.

■ Appellant also asked Dr. Driscoll to list the causes of rectal incontinence with a view toward proving the operative cause by excluding all others. The court refused to allow an answer on the ground that the causes could be many. To this counsel replied, as his sole offer of proof, that in a deposition Dr. Driscoll had listed two or three other causes, no one of which applied to this case. Since there was no indication that this purported to encompass all possible causes, the court acted within its discretion. The hazards of far-ranging collateral inquiry in the absence of a restricted range of possibili-

on the breach of contract count (Count II). Almost an hour later it returned its verdict absolving defendant Leventhal of negligence under Count III. One hour and a half later it announced its inability to agree on Count I (negligence of defendants Jewett and Driscoll).

If the jury had based its Count II verdict on a finding that, while defendants Jewett and Driscoll abandoned their contract, there was no negligence on the part of Dr. Leventhal, it would, rationally, have announced its verdict on Count III at the same time, instead of an hour later. If, however, the jury's verdict on Count II stemmed from a finding of no abandonment, there would be no reasonable explanation for its inability to find defendants Driscoll and Jewett free of negligence under Count I during the one and a half hours following its verdict for Dr. Leventhal. The latter finding foreclosed any question of vicarious negligence, leaving only the question of unreasonable failure to appear in time to perform the delivery. But this would have been answered two and one half hours earlier had the jury in fact posited its Count II verdict on a finding of no abandonment. The only rational explanation for the Count II verdict in the light of this sequence, is that while at least some of the jury felt Dr. Leventhal was negligent, but also felt there was no abandonment, at least some thought there was abandonment but that this was rendered harmless by their view that Dr. Leventhal was not neglient under the standards given in the court's instructions.

ties constitute good reason for vesting such discretion in the trial court.

We find appellant's remaining contentions, that the trial judge erroneously limited evidence to which there was no objection and erroneously refused to give a requested instruction that a wilful misrepresentation of a material fact is evidence of culpability, to be wholly without merit.

Judgment for appellees Jewett and Driscoll on Counts I and II is vacated and the case remanded for a new trial not inconsistent with this opinion. Judgment for appellee Leventhal on Count III is affirmed.