Oscar F. COLLINS, Plaintiff-Appellee,

v.

**PENN CENTRAL TRANSPORTATION COMPANY, Defendant-Appellant.**

**No. 692, Docket 72–1191.**

United States Court of Appeals, Second Circuit.

Argued March 4, 1974.

Decided May 31, 1974.

Paul W. Beltz, P. C., Buffalo, N. Y., for plaintiff-appellee.

John E. Leach, Buffalo, N. Y. (Brown, Kelly, Turner, Hassett & Leach, Buffalo, N. Y., of counsel), for defendant-appellant.

Before LUMBARD, HAYS and OAKES, Circuit Judges.

HAYS, Circuit Judge:

The appellee, Oscar F. Collins, brought this diversity action alleging that he suffered personal injuries as a result of the negligence of the appellant, Penn Central Transportation Company. After a trial the jury returned a verdict for appellee and the district court entered judgment on the verdict. Penn Central appealed. We affirm.

 As the first ground for appeal appellant claims that appellee failed to adduce sufficient evidence to support the verdict of the jury. We disagree.

Appellee worked for a contractor constructing an electric transmission line from Niagara Falls to Rochester. When the accident occurred appellee was standing some two hundred yards from the railroad tracks and was coiling a rope attached to a cable which was strung over the tracks on a set of riser-poles. A train passing on the track caught the cable, which in turn pulled the rope so that it ensnared appellee, throwing and injuring him.

Appellee introduced evidence tending to show that the railroad had notice that the construction work was under way but had failed to provide for a flagman in the area, that the members of the crew of the train failed to keep a proper lookout and therefore failed to observe that the cables were hanging too low to permit the train to pass, that the train was moving too rapidly at the time, and that the train failed to warn of its approach.

Appellant contends that the cable which injured appellee had been high enough for the train to pass, but that it slipped at the last moment, leaving the train crew insufficient time to stop to prevent the accident. However, the testimony on the heights of the cable was conflicting and often ambiguous. Testimony as to whether and when the cable which caused the injury slipped was even more ambiguous. We cannot set aside the verdict of the jury unless, when viewing the evidence in the light most favorable to the prevailing party, "there is a complete absence of probative facts to support the conclusion reached" by the jury. Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946); Fleming v. American Export Isbrandtsen Lines, Inc., 451 F.2d 1329, 1331 (2d Cir. 1971); Myers v. Town of Harrison, 438 F.2d 293, 298 (2d Cir.), cert. denied, 404 U. S. 828, 92 S.Ct. 64, 30 L.Ed.2d 57 (1971). Where there is such a substantial conflict in the evidence as there is in this case, the verdict of the jury must stand.

Penn Central also appeals on the ground that counsel for appellee improperly attempted to prejudice the jury by referring to reports not in evidence even after the trial judge had excluded the reports.

Shortly after the accident the railroad took statements concerning the event from the members of the crew of the train. Before trial several of the crewmen died. Appellee argued that the records of these statements were business records and were admissible as an exception to the hearsay rule under 28 U.S.C. § 1732 (1970). The district court disagreed.

On this appeal appellee renews his claim that the statements were properly admissible. However, we need not decide that issue, for even if the district court was correct, appellants suffered no substantial harm from the references to the statements.

 Early in the trial the district judge refused to admit the statements in evidence because he did not believe that there was sufficient proof that records of these statements were kept for purposes other than litigation. The court permitted counsel for appellee to question witnesses in front of the jury in an

attempt to ascertain how the railroad prepared these records and for what purposes it used them. Several questions which were asked early in the trial and to which appellant now objects were apparently asked by appellee in a good faith effort to satisfy the court's doubts. Appellant did not object to these questions. Moreover, the court voluntarily excused the jury on several occasions so that the questioning might continue in their absence. Without commenting on the wisdom of this procedure, we find that it did not prejudice the appellant.

■ Appellee failed to convince the district court that the statements were admissible. However, counsel continued to try to make use of the statements in several ways. In certain cases he asked witnesses questions based on hypothetical situations containing facts which he apparently culled from the statements. These facts had never been placed in evidence, and the jury had no way of knowing they were contained in the statements. The court overruled appellant's objections to the questions and properly instructed the jury that the hypothetical situations were assumptions only and not evidence to be considered by them. This was not error. Counsel may ask a hypothetical question so long as he states specifically the factual assumptions of the question. See 2 Wigmore, Evidence §§ 672–686 (3d ed. 1940). Of course, if the party does not independently prove the facts assumed, the jury is free to disregard the conclusion of the witness.

Several times the judge instructed the jury that the parties disagreed about the admissibility of certain evidence, that the judge and not the jury would resolve the dispute, that statements made by certain persons since deceased were not admissible, and that the jury should draw no inferences from references to such statements.

■ On one occasion the court permitted a witness to use one such statement to refresh his memory. This was proper. 3 Wigmore, Evidence § 758

(Chadbourn rev. 1970); United States v. Rappy, 157 F.2d 964, 967–968 (2d Cir. 1946), cert. denied, 329 U.S. 806, 67 S. Ct. 501, 91 L.Ed. 688 (1947); Fanelli v. United States Gypsum Co., 141 F.2d 216, 217 (2d Cir. 1944).

In closing statements to the jury counsel for appellee repeatedly implied that the railroad had withheld relevant evidence. Appellant did not object to these statements. Twice, however, the court itself interrupted counsel for appellee and admonished him to refrain from such remarks.

In its charge to the jury the lower court stated clearly that the jury should consider only evidence properly adduced in the courtroom. Appellant took no exceptions to the court's charge.

There was no reversible error.

Affirmed.

LUMBARD, Circuit Judge (dissenting):

I dissent. The conduct of plaintiff's counsel in his repeated and improper references to matters designed to prejudice the defendant, many of them in contravention of the trial judge's directions, deprived the defendant of a fair trial.

To understand the issues here it must be realized that because of the extraordinarily long delay in the case's coming to trial (some ten years after the accident) several employees of the then New York Central Railroad who had been involved in the Collins accident had died before trial. Evidently plaintiff's counsel made no effort to depose these employees prior to their deaths. These employees had, however, submitted handwritten statements shortly after the accident to the railroad's claims department. Counsel for plaintiff attempted to secure admission of these statements as business records under 28 U.S.C. § 1732. After much testimony and careful consideration, the late Chief Judge Henderson ruled that the statements were not admissible. Despite this ruling, plaintiff's counsel, by posing hypothetical questions not based on the evidence and

by referring to the contents of the statements in attempts to refresh the recollection of witnesses, ensured that the jury learned of the contents of the statements. Furthermore, counsel in summation castigated the railroad for doing what it had a perfect right to do—objecting to the admission of inadmissible evidence. These acts by counsel, to which proper objection was made, must have seriously affected the defense and the size of the jury's verdict, $430,000; in my opinion, they mandate reversal of the judgment and a new trial.

The evidence before Judge Henderson indicated that the claims department of the railroad took statements from employees in personal injury cases in its discretion, usually when it thought there might be litigation. These statements were not used by the railroad to promulgate safety rules. After considering the Supreme Court decision in Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), the Seventh Circuit decision in Leon v. Penn Central Co., 428 F.2d 528 (7th Cir. 1970), and our decisions in Pekelis v. Transcontinental & Western Airlines, Inc., 187 F.2d 122 (2d Cir.), cert. denied, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951), and Puggione v. Luckenbach S. S. Co., 286 F.2d 340 (2d Cir. 1961), Judge Henderson concluded that the statements were not admissible. Since in *Puggione* we said that trial judges have discretion in admitting such statements, 286 F.2d at 344, it is difficult to argue that Judge Henderson was wrong. Certainly plaintiff did not meet his burden of proof in showing that the statements were made in the regular couse of business. Be that as it may, the function of correcting any such errors by Judge Henderson lies in this court, not in self-help remedies by plaintiff's counsel which violate and circumvent the rulings of the trial judge.

One statement which was excluded was made by the train's engineer, Daniel Rogers. Rogers wrote that as the train went under the cables he heard a noise on the roof of the cab. He leaned outside the window and saw the cable whipping around the roof. He then went back into the cab and applied the train's brakes in a service, not an emergency, application.

Even though there was no competent evidence in the record to support the hypothetical question, plaintiff's counsel asked a retired locomotive engineer how long it would take an engineer who heard a noise on top of his cab to look out the window, see a cable, and apply his brakes in a service application. Objection to this question was sustained. A minute later counsel asked the engineer how long it would take an engineer to look out the window to the top of his cab, come back inside, and apply his brakes. For reasons not clear in the record, an objection to this question was overruled, but this question only repeated for the jury's benefit the possibilities of what was contained in Rogers' statement which had been excluded.

The majority tries to excuse this behavior by implying that hypothetical questions can be used even if there is no evidence in the record to support the factual assumptions. There is no support for this view. The citation to Wigmore's treatise does not support this assertion. Wigmore clearly says that such questions "*must not include data which there is not a fair possibility of the jury accepting.*" J. Wigmore, Evidence § 682, at 805 (3rd ed. 1940) (emphasis original). Our decisions have consistently supported this rule. See Cisneros v. Cities Service Oil Co., 334 F.2d 232 (2d Cir. 1964); Dworzansky v. Glenn Cartage Co., 192 F.2d 166 (2d Cir. 1951); Napier v. Greenzweig, 256 F. 196, 203 (2d Cir. 1919); Erie R. Co. v. Linnekogel, 248 F. 389, 392 (2d Cir. 1917). See also Grand Island Grain Co. v. Roush Mobile Homes Sales, Inc., 391 F.2d 35, 40-41 (8th Cir. 1968); Alexandridis v. Jewett, 388 F.2d 829, 834 (1st Cir. 1968); Jackson v. Nelson, 382 F.2d 1016 (10th Cir. 1967); C. McCormick, Evidence § 14, at 33 (2d ed. 1972); Proposed Fed.R.Evid. 703. The only

justification for asking these hypothetical questions was to get the contents of Rogers' statement before the jury.

The behavior was repeated in the questioning of Ernest O'Donnell, the fireman of the train and the only one of the three men in the cab at the time of the accident who was still alive by the time of the trial. O'Donnell testified that he thought that Rogers went into an emergency braking despite plaintiff's counsel's leading questions. Counsel then asked O'Donnell if Rogers would know what type of brakes he applied. O'Donnell said that he thought so. Counsel then asked if his recollection would be refreshed if he saw Rogers' statement. An objection was sustained. Then counsel asked O'Donnell if Rogers waited until he had looked out the window to apply the brakes. O'Donnell said that it was possible; counsel replied, "No, not only possible." At this point it was not clear who was examining and who was testifying. While it may be proper to attempt to refresh a witness' recollection with someone else's statement, it is clearly improper to refer to the statements by the name of the person who made the statement, as counsel did several times here, and in combination with leading questions ensure that the jury learns the contents of the statement.

Similar episodes occurred in regards to the statement of the deceased railroad employee, William Hooley, whom the Emerson-Garden Company, plaintiff's employee, contacted about securing a flagman from the railroad for the site where the power lines crossed the tracks. One witness was asked if Hooley's statement would refresh his recollection on whether Hooley made a phone call, and then later he was asked if it was true that Hooley called Harry Calahan, the Chief Clerk of the Buffalo Terminal, about getting a flagman. The witness had no knowledge of the matter and the only purpose of the question was to get the contents of Hooley's statement before the jury.

To compound these abuses, counsel in summation castigated the railroad for not giving the jury all the facts. He even went so far as to say that the only break plaintiff ever had was that the railroad accidentally turned over the statement of the engineer and only then did they "begin to find out some facts." The district court then admonished the jury, as it had done several times previously, on the problems of hearsay evidence. Later on during plaintiff's counsel's summation, defendant twice moved for a mistrial. The first motion came after another attack on defendant for keeping evidence from the jury; the second came after some inflammatory remarks at the end of summation. Judge Henderson once again admonished the jury after the second motion but by this time admonitions were of little use. Only a new trial could correct the effects of counsel's actions.

The acts of plaintiff's counsel here strike at the heart of judicial control over the admission of evidence and a fair trial on the evidence properly received; they are certainly as prejudicial as referring to defendant as being a member of the Mafia, Koufakis v. Carvel, 425 F.2d 892, 901–908 (2d Cir. 1970), or referring to the fact that defendant was insured, Cuccarese v. Soloman, 405 F.2d 866 (2d Cir. 1969); Brown v. Walter, 62 F.2d 798 (2d Cir. 1933). It was error for Judge Henderson to deny defendant's motions for a new trial, for as we noted in Koufakis a trial judge has an affirmative duty to protect parties from grossly improper tactics.

In cases such as this where counsel deliberately and repeatedly disregards the court's ruling and accomplishes by indirection what has been prohibited, the only sanction which fits the transgression is the setting aside of the verdict and the granting of a new trial. Any admonishment or lamentation is of no consequence. Unless trial attorneys know that any result which may have been achieved by tactics which ignore

and evade the trial judge's rulings will be set aside and nullified, they will pay little attention to those rulings.

I would reverse and remand for a new trial.